## DUNCAN v. UNITED STATES.

### TILTON v. SAME.

Circuit Court of Appeals, Seventh Circuit.
November 29, 1927.

Rehearing Denied January 23, 1928.

Nos. 3939, 3940.

1. **Criminal law ⬅778(5)—Charge requiring defendant to explain possession of forged check to jury's satisfaction held erroneous, as creating impression burden of proof had shifted.**

In prosecution for defrauding and conspiring to defraud United States, and forging and passing a forged check drawn by Treasury Department, charge requiring defendant to explain to satisfaction of jury how he obtained possession of check *held* erroneous, in that it left jury with impression that burden had shifted to accused to satisfy jury of his innocence.

2. **Criminal law ⬅327—Burden of proof in criminal case never shifts.**

In a criminal case, the burden of proof never shifts, and government is required to establish its case beyond a reasonable doubt.

3. **Criminal law ⬅1186(1)—Defendant, convicted as joint participant with other defendant granted reversal for error in charge, held entitled to reversal also.**

In case of reversal of conviction for defrauding and conspiring to defraud the United States, and forging a check drawn by Treasury Department, and passing check drawn by Treasury Department, because of error in charge, defendant, convicted as joint participant in crime, is also entitled to reversal.

In Error to the District Court of the United States for the District of Indiana.

Russell V. Duncan and Charles W. Tilton were convicted of defrauding the United States, conspiring to defraud the United States, forging a check drawn by Treasury Department, and passing a forged check drawn by Treasury Department, and they separately bring error. Reversed and remanded for a new trial.

Milton L. Clawson and John F. Robbins, both of Indianapolis, Ind., for plaintiffs in error.

Albert Ward, of Indianapolis, Ind., for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Both plaintiffs in error were charged in an indictment containing seven counts with having defrauded the United States, conspired to defraud the United States, forged a check drawn by the Treasury Department of the United States government, passed a forged check drawn by the Treasury Department, etc., and were convicted on all counts. Two other parties were named as codefendants, but they were both acquitted. Separate writs of error were prosecuted by the above-named plaintiffs in error. Both cases were argued together, and one opinion will suffice to dispose of the two writs.

Error is assigned because the court refused a continuance of the case, necessitated by the absence of a material witness. It was also argued that the evidence was insufficient to support a conviction, and error, too, is assigned because of the court's charge to the jury. It will be necessary to consider only the last-named error. As a proper background for the consideration of this assignment of error, only a brief statement of facts is necessary.

The government issued a check to John W. Smith for $3,094.91. It was duly presented to a bank by plaintiff in error Duncan, with three indorsements on the back thereof: "J. W. Smith. John W. Smith. R. V. Duncan." The check was cashed by the bank, and later by the United States government. This check was issued by the government to a taxpayer who had overpaid his income tax the preceding year. When received by Smith, it was sent to the Indiana internal revenue collector as part payment of his next year's income tax. It was never indorsed by the payee, John W. Smith, and while in the possession of the internal revenue collector it was stolen, and subsequently presented by Duncan to the bank. Duncan testified that he received the check in part payment of the purchase price of certain real estate that he sold to a man calling himself John W. Smith, and that he (Duncan) presented the check to the bank, believing the signatures were the genuine signatures of the payee.

Tilton was a law student, studying and working in the office of Duncan, and there was testimony from handwriting experts to the effect that the two "Smith" indorsements on the back of the check were written by Til-

ton. This was denied by Tilton, and his testimony was corroborated by the testimony of a handwriting expert. His counsel also confidently calls our attention to the signatures to support Tilton's denial. It will thus be seen that defendants did not controvert that part of the government's case which necessitated proof that the check had been forged, that Duncan had possession of it, indorsed his name thereon, and presented it to the bank for payment.

In the course of the charge to the jury the following occurred:

"Court: Further, gentlemen, with reference to this check, as I stated before, the defendant Duncan admits that he had possession of it. If you believe that that check was a stolen check, and that it was found in the possession of the defendant Duncan, then, gentlemen, it becomes the duty of the defendant Duncan to explain to you, to your satisfaction, how he obtained possession of that check.

"Mr. Clawson: If the court please, does the court mean, by that, that the burden is on the defendant Duncan to show how he came into the possession of that check?

"Court: I didn't say that. But you will have an opportunity to except at the proper time.

"Mr. Clawson: We take an exception to that instruction, if the court means that.

"Court: Mr. Reporter, just read that. (The reporter read the instruction as above set out.)

"Mr. Clawson: I think, your honor, that that means that the burden is on the defendant, and we except to that instruction.

"Court: Is there anything wrong with that, Mr. Slack?

"Mr. Slack: I have no objection to it, your honor.

[1] This charge may well be criticized in several respects. We think the use of the word "admits," while not particularly prejudicial, was unfortunate. Likewise the statement, "if you believe that the check was a stolen check, and that it was *found* in the possession of the defendant Duncan," suggests that the defendant in some way concealed his participation in the negotiation of the check until the check was *found* by an investigator, or by some one else, in his (Duncan's) possession. The undisputed evidence showed that the check was indorsed by Mr. Duncan and presented by him to the bank. He never disputed the indorsement, but at all times recognized it as his own, and explained how the check came into his possession through a real estate deal, wherein one purporting to be John W. Smith was the purchaser, and presented the check in part payment of the purchase price.

[2] However, the more serious criticism of this charge is to be found in the next clause: "Then, gentlemen, it becomes the duty of the defendant *to explain to you to your satisfaction* how he obtained possession of that check." In a criminal case, the burden of proof never shifts. The government is required to establish its case beyond a reasonable doubt. When the evidence is sufficient to convince the jury beyond a reasonable doubt that property recently stolen is found in the possession of the accused, such accused person naturally carries the duty of explaining its possession. This, however, does not mean that in a criminal case the burden of proof shifts.

In explaining the possession of such recently stolen property, the accused is only required to offer such a rational explanation as will raise in the minds of the jury a reasonable doubt as to his innocence. To require him to explain to the *satisfaction of the jury* is to impose upon him a burden greater than the law requires. At least, it seems to us that such language, without further explanation, was sufficient to leave with the jury the impression that the burden had shifted to the accused to *satisfy* the jury of his innocence. For innocence or guilt, upon the disclosed facts, depended upon the explanation the accused offered respecting this possession of the check. Upon this narrow issue of fact the accused was merely required to raise a reasonable doubt as to his innocence, rather than "satisfy" the jury as to such innocent possession. We conclude that error was committed in giving this charge and that it was prejudicial to the defendant.

[3] Inasmuch as Tilton, who was charged as a joint participant in the crime, suffered to the same extent and in the same respect, the judgment as to both plaintiffs in error must be reversed. Feder v. U. S. (C. C. A.) 257 F. 694, 697, 5 A. L. R. 370.

The judgment is reversed, and the cause remanded for a new trial.