### UNITED STATES v. ADAMS.

(District Court, D. Oregon. January 19, 1894.)

#### No. 3,589.

POST OFFICE—NONMAILABLE MATTER—DECOY LETTERS.
A conviction cannot be had for mailing a letter giving information as to medicines for the prevention of conception, when the letter is in answer to a decoy letter of inquiry written by a government inspector under an assumed name, inviting correspondence and inclosing postage stamps therefore. U. S. v. Whittier, 5 Dill. 41, followed. U. S. v. Grimm, 50 Fed. 529, distinguished.

At Law. Indictment of Mrs. C. J. Adams for mailing nonmailable matter. Submitted to the court without a jury on an agreed statement of facts. Finding for defendant.

Daniel R. Murphy, U. S. Atty.
Henry E. McGinn, for defendant.

BELLINGER, District Judge. The indictment in this case charges the defendant with having on the 26th day of August, 1893, unlawfully deposited in the United States mails—

"A certain written letter, for mailing and delivery to E. May Dunkirk, Albany, Oregon; said letter containing information, directly, how, of whom, and by what means, a certain article and thing, designed and intended for the prevention of conception, might be obtained."

The indictment is found under section 3893 of the Revised Statutes of the United States, which provides as follows:

"Every obscene, lewd, or lascivious book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character, and every article or thing designed or intended for the prevention of conception or procuring of abortion * * * and every written or printed card, letter, circular, book, pamphlet, advertisement or notice of any kind giving information, directly or indirectly, where, or how, or of whom, or by what means, any of the hereinbefore mentioned matters, articles or things may be obtained or made, whether sealed as first class matter or not, are hereby declared to be non-mailable matter."

To knowingly deposit, or cause to be deposited, any nonmailable matter, for mailing, is made a crime by this section.

The case is submitted to the court without a jury, by stipulation of the attorney of the United States and the attorney for the defendant, upon the following agreed facts:

It is hereby stipulated and agreed by and between the parties hereto that on or about the 26th day of August, 1893, one H. P. Thrall assumed the name of "E. May Dunkirk," and wrote to the defendant, Mrs. C. J. Adams, a letter under said name of "E. May Dunkirk," and addressed to room 4, Hibernian building, 6th and Washington, Portland, Or., and sent said letter to Mrs. C. J. Adams through the United States mails, said letter being in words and figures the same as set up in the indictment herein; that there-

after he received a reply to said letter, which was handed to him, opened. by F. A. Schoppe, and that thereafter and thereupon he called upon the defendant, Mrs. C. J. Adams, and she admitted to said Thrall that she had written the letter dated August 26th, and addressed to "E. May Dunkirk, Albany, Oregon," and signed "M. M. E. Bachalt," said letter being handed to said Thrall by said Schoppe, being the letter set up in the indictment herein, and that thereupon he entered into a conversation with said Mrs. C. J. Adams relative to the purchase of the article or thing described in said two letters above described, and she agreed to sell him said article or thing for the price of $3.00 in case he, said Thrall, would give her the assurance that he was a married man. That said letter was sent by said Thrall to room 4, Hibernian building, in pursuance to the advice of the U. S. attorney for Oregon. It is further stipulated and agreed by and between the parties hereto that the letter described in the indictment as having been written by Miss E. May Dunkirk at Albany, Or., was in fact written by N. P. Thrall, who then was and still is a postal inspector of the government of the United States, and that in all the acts which the said Thrall did he was acting for the U. S. government; that, by and with the consent of the U. S. postal officers, the said letter purporting to have been written by E. May Dunkirk was inclosed in a sealed envelope addressed as in the indictment described, having a two-cent postage stamp upon the face, and was postmarked "Albany, Or., August ——, 1893;" that said letter was not mailed as postmarked at Albany, Or., but was postmarked at Portland, Or., with a marking stamp furnished said Thrall by the secret service of the United States post-office department; that said postmark was affixed by the said Thrall with the marking stamp so furnished him in the presence of, and with the consent of, the said officers of the United States government; that thereupon said letter in said envelope, so sealed, postmarked, addressed, stamped, was by the said Thrall delivered to the officers of the Portland, Or., post office, and by them placed in the mail, and was delivered to room 4, Hibernian building, at Portland, Or., by a letter carrier from the Portland, Or., post office, said room 4 being the office where the defendant has an office as a manicure and chiropodist, and the same was there received by a person having charge of said office. It is further stipulated that the letter charged in the indictment as having been written in reply to said letter of Miss E. May Dunkirk by the defendant was by the defendant deposited, or caused to be deposited, in the Portland, Or., post office, and the same was never sent to Albany, Or., or delivered to E. May Dunkirk, but said letter was taken out of the Portland post office, at Portland, Or., by the said Thrall, or by the United States post officers acting for the government, for the purpose, singly and solely, of procuring information, and detecting and ascertaining if the defendant was knowingly depositing, or causing to be deposited, nonmailable matter in the U. S. mails; that there is no such person as E. May Dunkirk; that E. May Dunkirk is a fictitious person, having no existence, and, had said letter gone to Albany, Or., it could not have been there delivered to E. May Dunkirk; that the name "E. May Dunkirk" was assumed by the said Thrall for the purpose of entrapping the defendant, and was not assumed by him for the purpose of obtaining the information as to when, where, or how any medicine for the prevention of conception could be obtained; that the defendant did not know that E. May Dunkirk was a fictitious person.

The letters mentioned in this stipulation are as follows:

Albany, Oregon, Aug 23—93

Room 4, Hibernian, 6th and Washington, Portland, Oregon. I noticed your advertisement in the Oregonian this morning "To Ladies Only" I cut out of the Oregonian last May an advertisement of the Corona Co. Which is similar to yours and which I answered to day, but for fear it is not the same I will write you also. Without wasting any words I will come to the point and say that I want something that will prevent conciption without danger or injury to the health. I am about disgusted with the remedies I have tried and am willing now to give a good price for the right kind of a remedy. Can you help a friend who is in the family way, about two

months gone— You can correspond with me with absolute secrecy under
the name . ,                                                    May Dunkirk
Enclosed find stamps                                           Albany, Oregon.

                                    Portland, Oregon, Aug. 26th, 1893
    E. May Dunkirk, Albany, Oregon.  Dear Madam:—Your letter at hand.
will say in regards to remedy that if you are in that way the medicine is
no good but if you are not it is one of the finest preventive that has ever
been on the market.  It sold without an agent 15 hundred boxes and over
in the last year  now think for yourself what an elegant article it must
be  it is external use perfect Harmless Garinteed  now it sells at 3 dollars
a box  now you would never go with out after once trying  you can send
money by express register letter one money order and the remedy will be
sent charges paid                         Respt
                                    M M E Bachalt
                               Room 4 Hibernian Bldg
                                    6 & Washington Street
                                        Portland Oregon

    It was held by Judge Dillon in U. S. v. Whittier, 5 Dill. 41, that
an answer to a fictitious letter of inquiry addressed to a person
who had no existence could not have given to any person the in-
formation prohibited by the statute, and was therefore not within
the prohibition of the statute; that a letter which is brought with-
in the statute only by a fictitious letter of inquiry written by a de-
tective is not the "giving of information," within the meaning of the
statute.    Judge Treat, concurring in that case, said:

    "The sense of indignation against such vocation or conduct should not per-
mit a violation by the courts of established rules of law, or unlawful exer-
cise of jurisdiction nor the countenance of unlawful contrivances to induce
or manufacture crime."  "No court," says Judge Treat, "should, even to aid
in detecting a supposed offender, lend its countenance to a violation of posi-
tive law, or to contrivances for inducing a person to commit a crime." ·

    In U. S. v. Bott, 11 Blatchf. 346, it was held by Judge Benedict
that the transmission of drugs through the mails is an offense, al-
though the defendant was inveigled to mail the package by a de-
coy.    Wharton's Criminal Law, referring to these two cases, dis-
tinguishes them upon the ground that the clause, "giving informa-
tion," in the statute, does not qualify the transmission of drugs, as
it does that of books or writings.

    In the recent case of U. S. v. Grimm, 50 Fed. 529, it is held that
this charge does not lose its criminal character though the letters
were sent in response to an inquiry made under an assumed name
by a government official, with a view to detecting the defendant in
the commission of an offense, since it does not appear that the ac-
cused was solicited to use the mails, and thus to commit an offense.
The court says, if the act is done without solicitation on the part
of the officer that the mails be used to convey the prohibited in-
telligence, the weight of judicial opinion seems to be that the act
is criminal, though the offense may have been committed in re-
sponse to an inquiry from a person in the government service,
which was made under an assumed name for the purpose of con-
cealing his identity.    In the present case the government agent,
Thrall, solicited the prohibited information under the name of "E.
May Dunkirk," and he solicited the defendant to use the mails for
its transmission.    In his decoy letter, he says, "You can correspond

with me with absolute secrecy under the name E. May Dunkirk, Albany, Oregon." To facilitate the correspondence, he inclosed stamps, so the decoy letter states, and the fact was admitted on the argument. This "correspondence" between the accused in Portland and the fictitious person at Albany, which was to employ postage stamps, must necessarily have been through the mails. The accused must have so understood the decoy letter. The government agent was therefore not engaged in detecting crime, but in procuring its commission.

The supreme court of Michigan, in Saunders v. People, 38 Mich. 218, denounce the practice of decoying or conniving with persons suspected of criminal designs for the purpose of arresting them in the commission of the offense. Marston, J., in a concurring opinion, says:

"Some courts have gone a great way in giving encouragement to detectives in some very questionable methods adopted by them to discover the guilt of criminals; but they have not yet gone so far, and I trust never will, as to lend aid or encouragement to officers who may, under a mistaken sense of duty, encourage and assist parties to commit crime in order that they may arrest and have them punished for so doing."

Campbell, C. J., said the encouragement to criminals to induce them to commit crimes in order to get up a prosecution against them is scandalous and reprehensible.

In the case on trial the government agent thought it necessary not only to solicit the commission of the crime charged, but to make an urgent appeal to the accused to such end: "Can you help a friend who is in the family way, about two months gone?" To this the accused answered, "If you are in that way, the medicine is no good." And at a personal interview subsequently had with the accused the government official, if one engaged in such service can be so called, was informed that he could not have the preventive remedy unless he would give assurances that he was a married man. These facts tend to show that the accused was reluctant to act in the particular transaction, and the fact adds to the reprehensible character of the conduct of the prosecuting witness. There is no case which goes so far as to allow a conviction upon such a state of facts. The case is within the rule adopted in U. S. v. Whittier, above referred to.

The finding is that the defendant is not guilty.