### UNITED STATES v. LYNCH.

(District Court, S. D. New York. December 20, 1918.)

1. CRIMINAL LAW ⬤⇒37—DEFENSES—ENTRAPMENT.
    A defendant cannot be convicted of a crime which was provoked or induced by a government officer or agent, and which otherwise would not have been committed.

2. CRIMINAL LAW ⬤⇒37—DEFENSES—ENTRAPMENT.
    The government *held* estopped from prosecuting a defendant for offering a bribe to secure a government contract for his firm on the ground that the offer was induced by an army officer at the instance of the Military Intelligence Department for the purpose of entrapment.

Criminal prosecution by the United States against Oscar J. Lynch. Verdict of acquittal directed.

Wm. H. Daly and M. Michael Edelstein, both of New York City, for defendant.

HOUGH, Circuit Judge (charging jury). I have spent some considerable time in reflecting upon what is a novel situation to me, and am

now prepared to dispose of this trial; a motion having been made on the part of the defendant on the whole case, and in respect to the second and third counts of the indictment, to dismiss or advise the jury to acquit. I have reduced my views to writing, and I will read them:

[1] It is plain and very old law that, while detectives and decoys are not only necessary, but praiseworthy, instruments in ascertaining whether a given person is committing or has committed crime, it is equally plain and old that detection exceeds its limits when the detective or the decoy provokes or creates a crime that would not otherwise have occurred. It is not always easy to apply this rule. Border line cases are difficult, and doubtless it is usually best to leave the matter to the jury when and if, in view of the evidence, a reasonable man would be justified in holding that the accused had the intent or desire to do that for which he is indicted, and seized and swallowed the bait that was laid for him.

After reflection and argument yesterday afternoon, when the gentlemen of the jury had retired or been excused, it is to me plain that in this case there is no contradiction of any vital or really important point of fact. Whether there were meetings, not only on September 19th, or on that day, and also a few days before, whether one man, months or years before that September last, borrowed money of the other, or whether one man ever said that he sometimes became unconscious, meaning thereby intoxicated, are no more than the trivial trimmings of the following outstanding and dominating facts:

[2] A man who expected to be an officer in the United States army, and had a very good reason to believe that he would be soon commissioned, was asked what he would want out of a government contract over which he seemed—only seemed—to have some control. He replied most properly, most honorably, "Nothing," because he was about to become an officer; and there the matter dropped on that occasion.

Later, days later, weeks later, at the instigation or by the order—it does not appear which, and it makes no difference which—of the governmental officers, or some of them, comprising the Department of Military Intelligence, this same man, now Capt. Fancher, said over the telephone that he had reconsidered this question of commission, when he had not reconsidered it at all, in truth and in fact, and then by his own statement he demanded money which he never expected to get in a manner that plainly seemed to say to the person to whom he made the demand:

"If you don't promise to pay secretly money to me, you don't get this government contract."

That was the trap or decoy. This, gentlemen, in my judgment as a lawyer, was going beyond all bounds; it was provoking and creating a crime; it provoked and created it by in effect and substance threatening loss if crime was not committed, and promising profit if it was committed. Under such circumstances the government is estopped from prosecuting on the ground that it caused and created that of which complaint is made.

Now, underlying this whole miserable affair is the fact that it all grew out of what I think is a dishonorable sort of commission, or com-

mission seeking that is all too common in this and every other commercial community; the story which you heard yesterday does not in substance and effect differ from the common and commonly known custom that, if a woman intrusts to her cook the business of going to the stores and procuring the sustenance for the family, buying it from grocers and butchers, the gift by the grocers and butchers to the cook is politely called a commission, for which, of course, the consumer pays in the long run, as the consumer generally pays for everything.

Now, that is not a pleasant thing to contemplate; but it is not, so far as the criminal law is concerned, unlawful. It is out of that bad custom that this poor business grew. The next source of growth was obviously the misdirected zeal of the Military Intelligence Department, or some of the officers of that department, who put Capt. Fancher in the position of a provoking agent. All of this makes me regret the whole occurrence. I may be permitted to say that I am sorry for every one concerned, but that does not change the law, which is that this prosecution cannot proceed, because it is an endeavor to punish a crime which would never have been committed if it had not been for the request, and I may almost say the threat, of the governmental officer to inflict loss, not upon the defendant, Lynch, personally, but upon his employing company, the Otis Lithographing Company, if they did not do the very thing for which this indictment is laid.

Therefore, gentlemen, I peremptorily advise you to acquit this defendant, and the clerk will enter verdict accordingly.