## UNITED STATES v. CERTAIN QUANTITIES OF INTOXICATING LIQUORS.

### (District Court, D. New Hampshire. June 27, 1923.)

### No. 230.

1. **Criminal law ⬤⟹37—Rules of "entrapment" defined.**

   Ordinarily a person, who at the suggestion or instigation of an officer commits a crime, not particularly affecting an individual in person or property, is as guilty as if the design had originated with him; but if the defendant had no intention of committing a crime, and was induced to do so by the officers, he cannot be convicted on the evidence so obtained.

2. **Criminal law ⬤⟹37—Evidence obtained by participation of officers in crime constitutes entrapment, unless defendants subject to reasonable suspicion, or proposal initiated by defendants.**

   Where the defense in a criminal case is entrapment, and the evidence consists of testimony by officers joining with defendants for the alleged purpose of detecting their crime, to warrant a conviction the officers must have had reasonable suspicion that the defendants were engaged in the commission of a crime, or were about to be so engaged, or the original suggestion or initiative must have come from the perpetrators.

3. **Intoxicating liquors ⬤⟹247—Act of federal prohibition officers in enticing Canadian youth to deliver liquor across line wrongful.**

   Evidence that federal prohibition agents crossed the line to Quebec for the purpose of obtaining information with respect to transportation of liquor, and that they induced claimant's son to sell and deliver certain quantities of liquor on the American side, *held* insufficient to warrant a decree for the destruction of the liquor; the record being completely void of any evidence other than that the son was enticed by the officers to violate the law.

4. **Intoxicating liquors ⬤⟹255—Liquors wrongfully seized after importation enticed by officers not subject to destruction as contraband.**

   Liquor brought into this jurisdiction from a foreign country through enticement of federal officers, and coming into the possession of such officers as the result of an unauthorized and wrongful seizure, is not subject to the provisions of the National Prohibition Act relating to the destruction of contraband intoxicating liquor.

At Law. Proceeding by the United States for the destruction of certain quantities of intoxicating liquors, in which Abram Guay appeared as claimant to 168 bottles of intoxicating liquor. Decree for claimant.

Raymond U. Smith, U. S. Atty., of Concord, N. H.

Merrill Shurtleff, of Lancaster, N. H., for claimant.

MORRIS, District Judge. Petition of the United States district attorney for the destruction of 168 bottles of intoxicating liquor, seized from Alexander Guay and Joseph Guay.

Abram Guay, of Hereford, in the province of Quebec, Dominion of Canada, appears as claimant in opposition to the government's petition, and prays that the liquor may be returned to him.

He bases his claim upon three grounds as follows:

"(1) Because said bottles of liquor were at the time of said seizure the property of said Abram Guay, and were not the property of said Alexander Guay and Joseph Guay, or either of them, and all of said liquors were seized without due process of law, in that said federal prohibition officers had no search warrant or other legal authority when they seized the same.

"(2) Because said prohibition officers enticed the said Alexander Guay to unlawfully and illegally transport said.bottles of liquor from said Hereford, in the province of Quebec and Dominion of Canada, into said town of Colebrook, in the United States of America, well knowing that they were enticing the said Guay to commit an offense against the laws of the United States of America.

"(3) Because said bottles of liquor were the property of said Abram Guay at the time they were illegally transported, and were taken from him by the said Alexander Guay and Joseph Guay without the knowledge or consent of the said Abram Guay and against his express orders."

The case came on for hearing on the 7th day of June, 1923, at which time evidence was introduced by both the government and the claimant. From such evidence I find that on the 19th day of September, 1922, two federal prohibition agents went by automobile to Hereford, in the province of Quebec, for the purpose of obtaining information with respect to liquor transported across the line into the United States. They first went to the house of one Dupuis. There they met a young man named Alexander Guay, 21 years of age, a son of the claimant. They talked with him about delivering to them across the line in New Hampshire a quantity of liquor in case they concluded to make a purchase. Guay gave them prices of delivery at different points in Vermont and New Hampshire. The next day they went back to Guay's home, which is located about 1¼ miles from the state line, and made arrangements with him to deliver to them that night on the Dixville Notch road, near Colebrook, N. H., 10 cases of liquor at $80 per case. Before making the agreement, Guay asked the agents why they did not take the goods back with them in their own machine. They professed fear of the federal authorities. Between 11 and 12 o'clock the officers went to the appointed place of meeting, and after waiting some time young Guay appeared, accompanied by one Joseph Guay, and told the officers "it was all off." He said he did not want to deliver the goods; that he was afraid they were "putting up a game on him." After some talk, in which the officers apparently satisfied him that everything was all right, and that there was no trick being played, he volunteered to go back and get his load. The officers waited, and in about two hours he returned with the liquor, which the officers seized, and which the government now seeks to have destroyed. The liquor seized belonged to Abram Guay, Alexander's father. At the time the officers visited the Guay place in Hereford, the claimant, Abram Guay, was not at home. He testified that at the time he and his wife were on a visit to Montreal, and that before he left home he gave Alexander instructions to sell no liquor in his absence; that when he was at home, if he happened to be busy around the place, he permitted his son Alexander to make sales; and that neither he nor his son had ever before sold any liquor and delivered it in the States. There was no evidence introduced to rebut this testimony, except the inference that might be drawn from the statement of the boy to the federal agents, giving them prices of delivery at certain points, including Colebrook, N. H., and St. Johnsbury, Vt. This, however, falls short of an admission that transportation to either of the points mentioned was actually performed by either of the Guays. While

the federal agents had information before going to Canada that liquor was being transported across the line, they had no evidence that either the claimant or his son were so engaged, or that it was being transported, except by those who went into Canada to purchase it.

The court is in doubt as to whether or not any specific instructions were given by the claimant to his son. As I view the evidence, it is immaterial. It is apparent that young Guay believed he had authority to make the sale, and without doubt he intended to make a good showing to his father upon the latter's return. The boy delivered 14 cases, instead of 10, and the sale amounted to $1,120. Apparently the boy was exalted with his own importance and elated with the idea of making such a large sale during his father's absence. The federal agents had no difficulty in overcoming any objections the boy advanced against making a delivery in the state. The sale would not have been made, except upon the solicitation of the federal officers.

Whether or not the claimant and his son were legally authorized to sell intoxicating liquor in Canada is of no importance. No offense was committed in this jurisdiction until the boy was induced to bring the liquor into New Hampshire. I find that the idea of committing an offense against the federal laws did not originate with Guay. It had its origin in the minds of the federal agents.

[1] The facts found involve the principles of the law of entrapment. The case is to be determined on the same principles applicable to criminal trials.

In the absence of special circumstances excusing it, a person who, at the suggestion or instigation of another, commits a crime not particularly affecting an individual in person or property, is just as guilty as though the design had originated with him, and this is true, though the suggestion came from an officer of the law. Of this class are crimes involving the illegal sale of intoxicating liquor. State v. Gibbs, 109 Minn. 247, 123 N. W. 810, 25 L. R. A. (N. S.) 449; State v. O'Brien, 35 Mont. 482, 90 Pac. 514, 10 Ann. Cas. 1006; Billingsley v. United States (C. C. A.) 274 Fed. 86. In the last case cited it was held that in a prosecution for transporting whisky from one state into another, contrary to the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8739a, 10387a–10387c), an instruction that, if the authorities had reasonable grounds to suspect defendants were causing whisky to be unlawfully transmitted, and one of them joined with defendants for the purpose of detecting their crime, the officer's act would not prevent conviction, but that if defendants had no intention of committing a crime, and were induced to do so by the officers, they could not be convicted, correctly states the law in relation to entrapment.

[2] An examination of numerous cases satisfies me that the federal courts have very consistently followed the rule that one of two conditions must be present to warrant a conviction in this class of cases—either (1) reasonable suspicion on the part of the officers that the party is engaged in the commission of a crime or is about to do so; or (2) the original suggestion or initiative must have come from the perpetrator. Billingsley v. United States, supra; Luterman v. United States (C. C. A.) 281 Fed. 374; Lucadamo v. United States (C. C. A.)

280 Fed. 653; Butts v. United States (C. C. A.) 273 Fed. 35, 18 A. L. R. 143; Rothman v. United States (C. C. A.) 270 Fed. 31; Peterson v. United States, 255 Fed. 433, 166 C. C. A. 509; United States v. Lynch (D. C.) 256 Fed. 983; United States v. Echols (D. C.) 253 Fed. 862; Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604.

In the case of Luterman v. United States, supra, Judge Woolley says:

"The law on this question is not open to dispute. Clearly it is against public policy to sustain a conviction for an offense where officers of the law have incited and induced its commission. * * * A distinction is readily to be drawn between inducing a person to commit a crime and luring him to disclose a crime which he has already committed."

The cases involving the law of entrapment are collected and analyzed in an able opinion by Judge Thomas (D. C. Conn.), recently published, in which the distinction I have made is sustained. United States v. Pappagoda, 288 Fed. 214.

In the instant case there is no satisfactory proof that Guay had previously been engaged in the transportation of liquor within the jurisdiction of the United States. The crime of transportation was initiated by the federal officers.

[3] The fact that a federal agent has reason to suspect that the defendant is engaged in or is about to commit a crime, and prepares for his detection, as a result of which he is entrapped in its commission, is no bar to conviction. Aid furnished by a federal officer to one who conceives the original criminal design is not a bar to conviction. But when federal officers go so far as to travel into a foreign jurisdiction, and there entice a young man 21 years of age to come into this jurisdiction to commit a crime, such officers are exceeding the bounds of their duty, and the law will not uphold their acts.

[4] The seizure being unauthorized and wrongful, the liquor never became contraband in this jurisdiction, and questions that might be raised under sections 25 and 26 of title 2 of the National Prohibition Act (41 Stat. 315), relating to the destruction of intoxicating liquors, do not arise.

The government's petition for its destruction is denied. A decree may be entered for the return of the liquor seized to the claimant.