## CASEY v. UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 500.   Argued January 11, 1928.—Decided April 9, 1928.

1. Where evidence in a criminal trial tends to prove inferentially that the offence was within the venue, and supplementary evidence on that point might be produced if attention were called to it, objection that the venue has not been established should be made specifically and not rested upon a general request to direct a verdict for want of sufficient evidence. P. 417.

2. Section 1 of the Anti-Narcotic Act in providing that absence of the required stamps from any of the drugs shall be prima facie evidence of a violation of the section by the person in whose possession such drugs are found, is merely a regulation of the burden of proof. P. 418.

3. This provision is constitutional as applied to a person charged with unlawful purchase of morphine who possessed the drug under circumstances warranting suspicion. P. 418.

4. Upon the evidence in this case, the court, acting on its own motion, would not be justified in deciding that the Government induced the crime. P. 418.

5. The amended Anti-Narcotic Act, as applied to this case, is within the power of Congress. P. 420.

20 F. (2d) 752, affirmed in part.

CERTIORARI, 275 U. S. 517, to a judgment of the Circuit Court of Appeals, affirming a conviction under the Anti-

Narcotic Act. The affirmance here is on the first count of the indictment, charging unlawful purchase. The second count, charging sales, was also upheld below, but in this Court was conceded to be bad by the Government.

*Mr. John T. Casey* for petitioner.

Count 1 does not state facts sufficient to show a violation. There is no allegation that petitioner failed to purchase the 3.4 grains of morphine " from a registered dealer in pursuance of a prescription." Interstate and interdistrict travel and communication are so constant and universal, that to presume that morphine was purchased in the district where it is found in one's possession would be irrational. The conclusion reached by the Circuit Court of Appeals on this point in opposition to the Seventh and Eighth Circuits should be reversed.

Mere possession of 3.4 grains of morphine, even if admitted, would not constitute a violation of the Act, whether the venue is included or not. The presumption is made only against dealers who are required to register and pay the special tax. It being now conceded that defendant is not such a person, an unlawful purchase cannot be presumed against him even if he possessed the small amount of morphine charged in Count 1. *United States* v. *Jin Fuey Moy,* 241 U. S. 864; *Linder* v. *United States,* 268 U. S. 5; *Johnson* v. *United States,* 294 Fed. 753; *Lewis* v. *United States,* 295 Fed. 678; *Hampton* v. *Wong Ging,* 299 Fed. 289; *Lamento* v. *United States,* 4 F. (2d) 901.

There is no legitimate or believable evidence of possession, upon which to presume a purchase, either lawful or unlawful. It is the truth that defendant never possessed a single grain of morphine in his life.

The Harrison Act is unconstitutional. *Linder* case, 268 U. S. 5. It was conceded by the government in the *Jin Fuey Moy* case, 241 U. S. 394, that it was passed for the purpose of carrying out the recommendations of the

International Opium Convention. Hence, the chief object of Congress was, not to raise revenue, but to stamp out what was regarded as a nefarious traffic. *Doremus* case, 249 U. S. 86; *Child Labor Tax Case,* 259 U. S. 20; *United States* v. *Daugherty,* 269 U. S. 360; *Hammer* v. *Dagenhart,* 247 U. S. 251; *Hill* v. *Wallace,* 259 U. S. 44.

*Solicitor General Mitchell,* with whom *Assistant Attorney General Luhring* and *Mr. Harry S. Ridgely,* Attorney in the Department of Justice, were on the brief, for the United States.

Count 2 of the indictment charged a failure to register and pay the tax as a dealer. The statute expressly provides that only those who sell or dispense the drugs from original stamped packages are dealers and required to pay the occupation tax. In this case there was no proof that the accused was dealing in stamped drugs. The evidence showed that he dealt in unstamped drugs, and the verdict of guilty under Count 1 was based on that fact. Under these conditions the conviction under Count 2 should not be sustained. *Weaver* v. *United States* 15 F. (2d). 38; *O'Neill* v. *United States,* 19 F. (2d) 322; *Butler* v. *United States,* 20 F. (2d) 570.

The statute should be construed to make possession of unstamped drugs prima facie evidence of the place as well as the fact of unlawful purchase, and so construed it is not invalid. The charge in Count 1 was purchase of drugs not in or from stamped packages. The proof showed possession of drugs not in stamped packages. To sustain the charge of unlawful purchase the United States was obliged to rely upon the presumption created by the statute. The presumption includes not only the fact of purchase but the place of purchase, so as to support the venue. *Brightman* v. *United States,* 7 F. (2d) 532 and *Cain* v. *United States,* 12 F. (2d) 580, *contra.* See also *DeMoss* v. *United States,* 14 F. (2d) 1021.

It would be a rare case where the prosecution could prove the place of an unlawful purchase without at the same time proving the fact of the unlawful purchase, and if the fact of the purchase must be proved the statutory presumption is worthless.   A statute should not be given a construction producing unreasonable results if it may be avoided.   *United States* v. *Katz,* 271 U. S. 354.   Construed as we contend it should be, the statute is not unconstitutional.   *Mobile, etc., R. R.* v. *Turnipseed,* 219 U. S. 35; *Yee Hem* v. *United States,* 268 U. S. 178; *O'Neill* v. *United States,* 19 F. (2d) 322.

The venue point was sufficiently raised by motion to direct a verdict.   While the record does not show that it was or was not mentioned expressly in pressing the motion it was called to the attention of the trial court in a motion for a new trial.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The petitioner, Casey, was convicted upon two counts of an indictment, the first of which charged him with the purchase of three and four-tenths grains of morphine not in or from the original stamped package, at Seattle, within the jurisdiction of the Court.   The conviction was sustained by the Circuit Court of Appeals.   20 F. (2d) 752. A writ of certiorari was granted by this Court.

Here the second count was admitted by the Government to be bad, so that the only matter to be considered is whether the conviction can be sustained upon the first. It is argued that the evidence is not enough.—Casey had practised law in Seattle for many years, had been in the habit of visiting King County jail and had defended prisoners addicted to the use of narcotics.   There was evidence tending to show that on different occasions he had promised to furnish them with opiates and that in pur-

suance of such promises and for pay received by him he had given or sent to them preparations of morphine, concealed, it was said, by soaking towels or the like in a solution of the drug.    If this evidence was believed it showed that Casey was in possession or control of what he sent and it safely may be inferred that he did not proclaim his illegal purpose by putting stamps upon the towels.    But the charge is a purchase, not a sale.    There was no testimony directly concerning the purchase and the Government relies in part at least upon the presumption of a violation of § 1 of the Act of December 17, 1914, c. 1, as amended by the Act of February 24, 1919, c. 18, § 1006; 40 Stat. 1057, 1130, 1131, that that section purports to create.    U. S. C. Title 26, § 692.

The amended section makes the purchase, sale &c., of opium and derivatives unlawful except in or from the original stamped package, and the absence of the required stamps from any of the said drugs ' shall be prima facie evidence of a violation of this section by the person in whose possession same may be found.'    For the petitioner it was argued that the presumption thus created does not and, consistently with the Sixth Amendment to the Constitution, cannot extend so far as to show a purchase within the district and thus to bring the case within the the jurisdiction of the trial Court.    The Circuit Court of Appeals answered that the objection to the venue was not raised specifically below.    The Court was asked to direct a verdict for the defendant on the ground that the evidence was not sufficient and elsewhere it has been held that such a request is enough to save the question, and that a presumption extended to the place of purchase could not be upheld.    *Brightman* v. *United States,* 7 F. (2d) 532.    *Cain* v. *United States,* 12 F. (2d) 580.    *Hood* v. *United States,* 14 F. (2d) 925.    *De Moss* v. *United States,* 14 F. (2d) 1021.    But we are of opinion that upon

318°—28——27

the facts of this case the Court was right. If the jury believed that the defendant, long established in Seattle, said that he had not the drug but would, and shortly thereafter did, furnish it, the inference that he bought it in Seattle is strong, and it is reasonable to suppose that if attention had been called to the point the inference could have been made stronger still. But the effort of the defence did not stop at this detail but was to show that Casey had nothing to do with the business and was wholly innocent of the offence charged.

With regard to the presumption of the purchase of a thing manifestly not produced by the possessor, there is a ' rational connection between the fact proved and the ultimate fact presumed.' *Luria* v. *United States,* 231 U. S. 9, 25; *Yee Hem* v. *United States,* 268 U. S. 178, 183. Furthermore there are presumptions·that are not evidence in a proper sense but simply regulations of the burden of proof. *Greer* v. *United States,* 245 U. S. 559. The statute here talks of prima facie evidence but it means only that the burden shall be upon the party found in possession to explain and justify it when accused of the crime that the statute creates. 4 Wigmore, Evidence, § 2494. It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the Government. 4 Wigmore, Evidence, § 2486. In dealing with a poison not commonly used except upon a doctor's prescription easily proved, or for a debauch only possible by a breach of law, it seems reasonable to call on a person possessing it in a form that warrants suspicion to show that ʼhe obtained it in a mode permitted by the law.—The petitioner cannot complain of the statute except as it affects him.

We do not feel at liberty to accept the suggestion that the Government induced the crime. A Court rarely can

act with advantage of its own motion, and very rarely can be justified in giving judgment upon grounds that the record was not intended to present. Upon this record, it was testified and might have been found for the Government that after Casey's visits addicts were noticed by the jailers to be under the influence of narcotics and that on a previous occasion Casey for money had got morphine at the request of Cicero, the supposed stool pigeon. It does not appear expressly that this last was told to the jailer before the supposed plot to entrap Casey, but in view of the relation between the parties it was very likely—and had the matter been in issue very probably would have been proved. We do not think that we are entitled to assume the contrary. If known to the jailers there was very probable cause to believe Casey an habitual practitioner. His own language when he was on guard, admitting that he frequently had promised the drug to prisoners, the testimony as to what was said in his presence (to the effect that he was the man who supplied the boys with narcotics when they wanted it) and his language importing habit, (as, that he hadn't a thing with him today) all tend to the same conclusion. We hardly can assume that the jailers did not know the facts in order to convict them of a gross wrong, when we keep in mind that the case was tried and the record made up without this in mind. Furthermore Casey according to the story was in no way induced to commit the crime beyond the simple request of Cicero to which he seems to have acceded without hesitation and as a matter of course. According to the evidence he seems to have promised morphine to Nelson, who does not appear to have been in the supposed plot. We are not persuaded that the conduct of the officials was different from or worse than ordering a drink of a suspected bootlegger. Whatever doubts we may feel as to the truth of the testimony we are not at liberty to consider them on the only question

before the Court. The grounds for uneasiness can be considered only by another power.

The statute is much more obviously a revenue measure now than when *United States* v. *Doremus,* 249 U. S. 86, was decided, and is said to produce a considerable return. *Alston* v. *United States,* 274 U. S. 289, 294. It is too late to attempt to overthrow the whole act on *Child Labor Tax Case,* 259 U. S. 20. It is said also that no opium is produced in the United States, and at all events the statute has been so modified that now at least *United States* v. *Jin Fuey Moy,* 241 U. S. 394, does not apply to this case. *United States* v. *Wong Sing,* 260 U. S. 18, 21. We pass as not needing discussion some minor points.

*Judgment upon the first count affirmed.*

MR. JUSTICE McREYNOLDS, dissenting.

I accept the views stated by MR. JUSTICE BUTLER. With clarity he points out the unreasonableness of the construction of the statute advocated by counsel for the United States. But I go further.

The provision under which we are told that one may be presumed unlawfully to have purchased an unstamped package of morphine within the district where he is found in possession of it conflicts with those constitutional guaranties heretofore supposed to protect all against arbitrary conviction and punishment. The suggested rational connection between the fact proved and the ultimate fact presumed is imaginary.

Once the thumbscrew and the following confession made conviction easy; but that method was crude and, I suppose, now would be declared unlawful upon some ground. Hereafter, presumption is to lighten the burden of the prosecutor. The victim will be spared the trouble of confessing and will go to his cell without mutilation or disquieting outcry.

Probably most of those accelerated to prison under the present Act will be unfortunate addicts and their abettors; but even they live under the Constitution. And where will the next step take us?

When the Harrison Anti-Narcotic Law became effective probably some drug containing opium could have been found in a million or more households within the Union. Paregoric, laudanum, Dover's Powders, were common remedies. Did every man and woman who possessed one of these instantly become a presumptive criminal and liable to imprisonment unless he could explain to the satisfaction of a jury when and where he got the stuff? Certainly, I cannot assent to any such notion, and it seems worthwhile to say so.

MR. JUSTICE BUTLER concurs in these views.

MR. JUSTICE BRANDEIS, dissenting.

The question presented is whether possession within the district of morphine not in the original stamped package is evidence sufficient to sustain the charge that it was illegally purchased therein. I have no occasion to consider that question. For, in my opinion, the prosecution must fail because officers of the Government instigated the commission of the alleged crime.

These are facts disclosed by the Government's evidence. In the Western District of Washington, Northern Division, prisoners awaiting trial for federal offences are commonly detained at King County Jail. The prisoners' lawyers frequently come there for consultation with clients. At the request of prisoners, the jailer telephones the lawyers to come for that purpose. A small compartment—called the attorneys' cage—is provided. Prior to the events here in question, the jailer had, upon such request, telephoned Casey, from time to time, to come to see prisoners accused of crimes other than violation of the

Narcotic Act. He had doubtless telephoned also upon request of prisoners who were accused of these crimes. For Casey had acted as attorney in a number of narcotic cases. The jailer observed—or thought he did—that after Casey came, some of those visited were under the influence of narcotics. He suspected that Casey had brought them the drug. To entrap him, the following scheme was devised by Patterson and Close, federal narcotic officers, and carried out with the aid of George Cicero, a convicted felon and drug addict, then in the jail on a charge of forgery, and Mrs. Nelson, the alleged sister-in-law of Roy Nelson, another prisoner and drug addict.

On December 29th, Patterson and Close installed a dictaphone in the attorneys' cage and arranged so that, from an adjacent room, they could both hear conversations in the cage and see occupants. Then they deposited with the superintendent of the jail $20 to Cicero's credit; arranged with him to request the jailer to summon Casey to come to the jail; and also that, when Casey came, Cicero would ask him to procure some morphine and would pay him the $20 for that purpose. The jailer telephoned Casey as requested. Thereafter the federal agents were in waiting. Casey did not come until about 10 o'clock on the morning of the 31st. Cicero talked from the attorneys' cage with Casey and gave him an order for the $20. By arrangement, Casey talked there also with Roy Nelson, who gave him an order on the superintendent for $50. Both orders were immediately cashed. Mrs. Nelson talked with Casey in the corridor.

The testimony of Patterson, Close, Cicero and Mrs. Nelson, if believed, is sufficient to prove that Cicero and Roy Nelson asked Casey to procure morphine for them; that he agreed to do so; that the money paid was for that purpose; that it was arranged that the morphine should be smuggled into the jail in laundry; and that

Mrs. Nelson arranged with Casey that she would call at his office in the afternoon. She did call, having first gone to the office of the narcotic agents and conferred with them. She testified that she saw at Casey's office a Chinaman or a Japanese; that Casey gave her the package for Roy Nelson; and that she took it immediately to the federal narcotic office. A federal narcotic agent who is a chemist testified that upon soaking one of the towels in the package brought to the office by Mrs. Nelson he found that it contained morphine.

I am aware that courts—mistaking relative social values and forgetting that a desirable end cannot justify foul means—have, in their zeal to punish, sanctioned the use of evidence obtained through criminal violation of property and personal rights or by other practices of detectives even more revolting. But the objection here is of a different nature. It does not rest merely upon the character of the evidence or upon the fact that the evidence was illegally obtained. The obstacle to the prosecution lies in the fact that the alleged crime was instigated by officers of the Government; that the act for which the Government seeks to punish the defendant is the fruit of their criminal conspiracy to induce its commission. The Government may set decoys to entrap criminals. But it may not provoke or create a crime and then punish the criminal, its creature. If Casey is guilty of the crime of purchasing 3.4 grains of morphine, on December 31st, as charged, it is because he yielded to the temptation presented by the officers. Their conduct is not a defence to him. For no officer of the Government has power to authorize the violation of an Act of Congress and no conduct of an officer can excuse the violation. But it does not follow that the court must suffer a detective-made criminal to be punished. To permit that would be tantamount to a ratification by the Government of the

officers' unauthorized and unjustifiable conduct.[1]  Compare *Gambino* v. *United States,* 275 U. S. 310.

This case is unlike those where a defendant confessedly intended to commit a crime and the Government having knowledge thereof merely presented the opportunity and set its decoy.  So far as appears, the officers had, prior to the events on December 31st, no basis for a belief that Casey was violating the law, except that the jailer harbored a suspicion.  Casey took the witness stand and submitted himself to cross-examination.  He testified that he had "never bought, sold, given away or possessed a single grain of morphine or other opiate" and that he had "never procured, or suggested to anyone else to procure morphine or narcotics of any kind."  He testified that the payments made on orders from Cicero and Roy Nelson were payments on account of services to be rendered as counsel for the defence in the prosecutions against them then pending.  He denied every material fact testified to by witnesses for the prosecution and supported his oath by other evidence.  The Government's witnesses admitted that the conversations in the attorneys' cage were carried on in the ordinary tone of voice; that there was no effort to lower the voice or to speak privately or secretly; and that they could have heard all that was said without the use of the dictaphone.  They admitted that when the narcotic agents searched Casey's office under a search

---

[1] *United States* v. *Adams,* 59 Fed. 674; *Woo Wai* v. *United States,* 223 Fed. 412; *Sam Yick* v. *United States,* 240 Fed. 60, 65; *Voves* v. *United States,* 249 Fed. 191; *Peterson* v. *United States,* 255 Fed. 433; *United States* v. *Lynch,* 256 Fed. 983; *Butts* v. *United States,* 273 Fed. 35; *United States* v. *Certain Quantities, etc.,* 290 Fed. 824; *Newman* v. *United States,* 299 Fed. 128; *Capuano* v. *United States,* 9 F. (2d) 41; *Silk* v. *United States,* 16 F. (2d) 568; *Jarl* v. *United States,* 19 F. (2d) 891; *Cline* v. *United States,* 20 F. (2d) 494.  See also *Di Salvo* v. *United States,* 2 F. (2d) 222; *United States* v. *Washington,* 20 F. (2d) 160, 162.  Compare *Blaikie* v. *Linton,* 18 Scot. L. R. 583.

warrant, on the evening of December 31st, they did not find any narcotics or any trace of them or any other incriminating article; and that when, at about the same time, they arrested Casey, he was taking supper with his wife and daughter at his home seven miles from Seattle.  Whether the charge against Casey is true, we may not enquire.  But if under such circumstances, the mere suspicion of the jailer could justify entrapment, little would be left of the doctrine.

The fact that no objection on the ground of entrapment was taken by the defendant, either below or in this Court, is without legal significance.  This prosecution should be stopped, not because some right of Casey's has been denied, but in order to protect the Government.  To protect it from illegal conduct of its officers.  To preserve the purity of its courts.  In my opinion, the judgment should be vacated with direction to quash the indictment. Compare *United States* v. *Healy,* 202 Fed. 349, 350; *United States* v. *Echols,* 253 Fed. 862.

MR. JUSTICE BUTLER concurs in this opinion.

MR. JUSTICE BUTLER, dissenting.

The first count charges an unlawful purchase of 3.4 grains of morphine.  The second charges unlawful sales. Defendant was convicted on both and sentenced to the penitentiary for fourteen months on each, the terms to run concurrently.  The Circuit Court of Appeals affirmed the judgment on both counts.  Here the Government rightly says that the conviction on the second count should not be sustained.  This Court accepts that view and, as to that count, petitioner is entitled to have the judgment reversed.

The indictment is under § 1 of the Harrison Narcotic Act of December 7, 1914, c. 1, 38 Stat. 785, as amended

February 24, 1919, c. 18, 40 Stat. 1057, 1131. It was enacted under Art. 1, § 8 of the Constitution granting to Congress power to lay and collect taxes. The words of the section under which the first count was found are:

"It shall be unlawful for any person to purchase . . . any of the aforesaid drugs except in . . . or from the original stamped package . . . ."

The essential substance of the first count follows:

Thomas J. Casey on the 31st day of December, 1925, at Seattle, Washington, did unlawfully purchase from a person unknown, and not in or from the original stamped package 3.4 grains of morphine.

By far the larger part of the testimony heard related to the second count and was not admissible to prove the purchase alleged in the first. That evidence can not fairly be brought forward now to sustain conviction on the first count.

Mere purchase or possession of morphine is not crime. Congress has not attempted, and has no power, to make either an offense. The gist of accusation is purchase of 3.4 grains of morphine that was not in or taken from a stamped package when delivered to defendant. That is the *corpus delicti*.

There was testimony sufficient to sustain a finding that defendant at the time and place specified, had possession of 3.4 grains of morphine. But there was no evidence to show how, when or where or from whom he got it. There is much difference between such a possession and the crime charged. A statutory provision is invoked in lieu of evidence to bridge this gap. It is found in the twelfth paragraph of the section; and, in order to show the immediate environment of the words relied on, the first three clauses of the paragraph are quoted.

"It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs except

in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found; and the possession of any original stamped package containing any of the aforesaid drugs by any person who has not registered and paid special taxes as required by this section shall be prima facie evidence of liability to such special tax: "

This section defines many offenses. They include purchasing, selling, dispensing, distributing, importing, manufacturing, producing, compounding, dealing in, administering and giving away of each of the numerous drugs mentioned in the section. The things forbidden are not alike. Some are essentially different from and inconsistent with the others. It can not reasonably be said that mere possession of 3.4 grains of morphine without a stamp thereon was sufficient to establish *prima facie* that defendant was guilty of all these crimes, or all that related to morphine or even to those respectively involving manufacture, sale and purchase of the 3.4 grains. There is no more reason to select one of these than there is to choose another for the application of the statutory rule of evidence.

The "absence of appropriate tax-paid stamps" cannot be said to make out dissimilar and inconsistent offenses. Tax-paid stamps are significant to show payment of taxes and their absence under some circumstances properly may be evidence of non-payment. According to its words, the clause in question merely makes such absence "prima facie evidence of a violation of this section," the clause following makes possession of an original stamped package containing the drug by one not registered, evidence of liability for a tax. Fairly considered both clauses have to do with tax liability. The first to the tax on the drug, and the second to the tax imposed on importers, dealers,

physicians, etc. That construction would be reasonable and would not stretch the law against those accused of the crimes created by the section.

And it is always to be remembered that this Act is to be construed as a measure to "lay and collect taxes." It has no other legal existence. The tax is one cent on each ounce or fractional part thereof. Defendant had 3.4 grains without a stamp on it. He is not accused of failure to pay a tax. The unlawful purchase charged is punishable by a fine of not more than $2,000 or by imprisonment of not more than five years or by both. U. S. C., Tit. 26, § 705. The only legal justification for such penalties is that they are calculated to aid collection of taxes. It is hard to continue to say that this Act is a taxing measure in order to sustain it. Eagerness to use federal law as a police measure to combat the opium habit—a purpose for which Congress has no power to legislate—should not lead to the enactment or the construction of laws that shock common sense.

And above all, the statutory rule of evidence should be construed having regard to the ancient and salutary doctrine known and rightly cherished as fair play by the people, the bar and the courts of this country, that every person on trial for crime is presumed to be innocent; and, that in order to convict him, the evidence must satisfy the jury beyond reasonable doubt that he is guilty of the crime charged. See *Coffin* v. *United States,* 156 U. S. 432, 453. *Cochrane and Sayre* v. *United States,* 157 U. S. 286, 298. *Davis* v. *United States,* 160 U. S. 469. The connection, if any, between the possession shown and the substance of the offense charged is too remote. Attention has not been called to any decision that goes so far. None can be found.

There is no evidence in the record that reasonably tends to show that defendant purchased the 3.4 grains of morphine or that, when purchased, it was not in or taken from the original stamped package.

I am of opinion that the judgment should be reversed.

MR. JUSTICE SANFORD, dissenting.

I think that the case is not made out by the statutory provision as to *prima facie* evidence, and that the judgment should be reversed.