**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard McKAY, Defendant-Appellant.**

**No. 12942.**

United States Court of Appeals
Seventh Circuit.

Oct. 27, 1960.

Rehearing Denied Nov. 29, 1960.

400

Sam Blum, Saul I. Rabb, Indianapolis, Ind., for appellant.

Don A. Tabbert, U. S. Atty., Philip R. Melangton, Jr., Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before SCHNACKENBERG and KNOCH, Circuit Judges, and MERCER, District Judge.

SCHNACKENBERG, Circuit Judge.

Upon the verdict of a jury, following a plea of not guilty, the district court convicted Richard McKay, defendant, of narcotic law violations, 26 U.S.C.A. § 4704(a) and 21 U.S.C.A. § 174, as charged in counts I and II of an indictment. From consecutive sentences on the verdict, defendant has appealed.

Defendant contends the court erred in overruling his motion to suppress evidence seized in his home after he had been arrested there by Indianapolis police officers, who had gone to the home with John Wilkie, Jr., a federal narcotics agent.

Before the trial started, the court conducted a hearing on defendant's motion to suppress, and at the trial, out of the presence of the jury, conducted a similar hearing upon an objection by defendant seeking to suppress such evidence. We now state certain facts shown on these hearings when the court refused to sustain defendant's position.

On May 21, 1959, the police officers and Wilkie were informed by Clinton Tucker, a drug addict on parole, that 41 capsules of heroin, buried in his back yard and recovered by the police, he had obtained from a man known as James Johnson[1] who had capsules of heroin in his apart-

1. Johnson said his name was Richard McKay.

ment at 729 Congress Avenue, in Indianapolis, where Tucker was to receive about 150 additional capsules at 7:30 o'clock that same evening, and that Johnson was about to leave town for Chicago in a described automobile, which would be sitting in front of the house. Police Sergeant Owen's testimony shows that he had learned from Tucker that on previous occasions Tucker had seen narcotic drugs in defendant's house and had obtained them from him. Based upon these facts, Sergeant Owen went to the Marion County prosecutor's office and swore to an affidavit charging defendant with a violation of the Indiana Narcotics Act.[2] He obtained a warrant for arrest from the deputy prosecuting attorney, all according to standard procedure in Indiana. The affidavit, along with a warrant, was taken by Sergeant Owen from the prosecutor's office to the clerk of the court, where they were file-marked. The affidavit was retained in the clerk's office and Sergeant Owen took the warrant.[3]

Sergeant Owen, Sergeant Keithley and Wilkie proceeded to 729 Congress Avenue where they observed an automobile fitting the description previously given them. Owen's knock on the house door was answered by defendant's wife who asked "Who is it?" Owen said "Tuck". She opened the door, Owen showed her his badge and identification card, and in his right hand he had the arrest warrant. He asked her if James was at home and she said "upstairs". Then Keithley and Wilkie talked to her and Owen went upstairs and was met by defendant at the top of the stairs. Owen showed him his badge and identification and read the warrant to him. He also handed the warrant to defendant who read it and returned it to the officer. It is not disputed that these facts show that defendant was then arrested. Defendant's wife, Wilkie and Keithley came up to the room.

There were cameras, lugagge, blankets and electrical appliances around the room and defendant said that most of them were stolen. He walked around pointing out those which were stolen and those which were "ours". Packed suitcases were in the room. Owen asked defendant if he had any heroin there and defendant stated he had no narcotics on his premises. After he was arrested, defendant was sitting directly by a small dinette table upon which was a napkin box. The room was about 12 x 16 feet. Defendant sat a foot or two from the table. Owen noticed there were several napkins on top that looked disturbed and he picked the box up and removed a few napkins from the top and saw a large ball of tin foil or aluminum foil, "right by Mr. McKay", defendant. The attention of Wilkie and Keithley was called to this fact. As Owen opened this ball he discovered several capsules containing a white powder and defendant said the capsules were his. A field test was made and showed that the powder was a derivative of opium. 21 U.S.C.A. § 171(a).

For six months prior to the arrest the police had been investigating defendant vigorously. They had information obtained from drug addicts and other people in Indianapolis known to the police by their nicknames—"Rabbit", "Lightning" and "Ham Man".

Defendant was taken to police headquarters where he was released on bond and at a subsequent court hearing the state caused the case to be dismissed. Sergeant Owen testified that he filed the arrest warrant at the police station in Indianapolis, but not in the court clerk's office. No arrest warrant for defendant has been found. No warrant to search the residence of defendant was obtained.

At the time defendant was arrested by the police no federal warrant had been issued. Such a warrant was obtained on May 22, 1959 from the United States

2. § 10-3538(b), 4 Part 2, Burns Indiana Statutes, Annotated.

3. The Indiana procedure for the issuance of warrants may be found in § 9-1001, 4 Part 1, Burns Indiana Statutes, Annotated.

commissioner by agent Wilkie, who had known since 1956 that the defendant was a narcotics peddler in Chicago and that he was under investigation "by our department for three or four years".

1. Defendant in this court argues that his motion to suppress evidence should have been sustained as the arrest of defendant and subsequent search of his premises were illegal. The government responds that the search of defendant's premises was incident to a valid arrest and not unreasonable.

The government here and in the court below (cf. Giordenello v. United States, 357 U.S. 480, 488, 78 S.Ct. 1245, 2 L.Ed. 2d 1503) has relied on two independent alternate contentions to sustain the judgment and sentence of the district court: first, the arrest was valid because there was sufficient evidence of probable cause to justify the arrest of defendant without a warrant, and second, the arrest was valid because there was sufficient basis for the issuance of the state warrant upon which defendant was arrested.

If, in either case, the arrest was valid, the finding of the heroin in defendant's room, under the circumstances of this case, occurred in a reasonable search incidental to his arrest and a search warrant was not required. United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 94 L.Ed. 653.

■ Facts in regard to defendant gained by the government narcotics agents and the police, as well as their own observations, strongly corroborated the reports on defendant made by Tucker the informer to them. They were obviously men of experience in their fields, Wilkie having been employed as a federal narcotics agent for about 9 years. Even though the information that Tucker gave to the officers and Wilkie was hearsay, they were legally entitled to consider it in determining whether there was probable cause, within the meaning of the Fourth Amendment, and reasonable grounds, within the meaning of 26 U.S. C.A. § 7607, to believe that defendant had committed or was committing a violation of the narcotic laws. Draper v. United States, 358 U.S. 307, 310–313, 79 S.Ct. 329, 3 L.Ed.2d 327. To the same effect is Jones v. United States, 362 U.S. 257, at page 269, 80 S.Ct. 725, at page 735, 4 L.Ed.2d 697, where the court said:

"In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 * * *".

In Draper, at page 313 of 358 U.S., at page 333 of 79 S.Ct., the court said:

" * * * Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280 [69 L.Ed. 543]."

Defendant relies upon Henry v. United States, 361 U.S. 98, at page 102, 80 S.Ct. 168, at page 171, 4 L.Ed.2d 134, where the court said:

" * * * And while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause. Carroll v. United States, supra, at 155–156, 45 S.Ct. at pages 285–286."

The court on the facts in that case concluded that the officers had not seen enough to permit them to believe that petitioner was violating or had violated the law. The court reviewed the relevant facts, at pages 103–104 of 361 U.S., at pages 171–172. Those facts differ so much from those in the case at bar as to

readily distinguish Henry from our case. The facts in Draper and Jones, supra, are essentially the same as those before us insofar as establishing probable cause for arrest without a warrant is concerned. We believe that the result which we reach is not inconsistent with anything said in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, or Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688.

We hold that the district court did not err in overruling defendant's motion to suppress evidence. In so holding we have not deemed it necessary to decide and have not decided whether the arrest was valid because of the state warrant.

2. Defendant in the district court objected to instructions in which the court informed the jury:

"In Count I of the Indictment the defendant in this case is charged with the violation of Title 26, United States Code, Section 4704(a). This Section reads, in its pertinent parts, in the words of the Statute, as follows:

" 'It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs, except in the original stamped package, or from the original stamped package.'

"In Count II of the Indictment the defendant in this case is charged with a violation of Title 21, United States Code, Section 174. This Section reads, in its pertinent parts, in the words of the Statute, as follows:

" 'Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States contrary to law, or receives, conceals, buys, any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought in—into the United States contrary to law'

shall be punished in a certain manner as provided in the Statute.

"The essential elements of the offense charged in Count I of the Indictment are, (1) the purchase, selling, dispensing, or distributing; (2) of narcotic drugs; (3) except in the original stamped package, or from the original stamped package.

"I instruct you that the Statute under which defendant is charged in Count I of the Indictment further provides: 'the absence of appropriate tax paid stamps from narcotic drugs shall be prima-facie evidence of a violation of this sub-section by the person in whose possession the same may be found.'

"I instruct you that the phrase 'prima-facie evidence' as used in this Statute, means that if you find from all the evidence that the defendant possessed narcotic drugs without the appropriate tax paid stamps, then if the evidence fails to explain or justify such possession, then you may infer that the defendant in whose possession narcotic drugs were found, if you so find beyond a reasonable doubt, has violated this Statute.

"The essential elements of the offense charged in Count II of the Indictment are, (1) the receiving, buying or concealing of a narcotic drug; (2) which has been imported or brought into the United States contrary to law; and (3) knowing that such narcotic drug has been imported or brought in contrary to law.

"The Statute under which the defendant is charged in Count II of the Indictment also provides that: 'whenever on trial for a violation of this sub-section, the defendant is shown to have, or to have had, possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.'

"By force of this provision of said Statute, the possession, if any, of a narcotic drug, gives rise to an inference that the narcotics were imported contrary to law, and a further inference that the person in possession had knowledge of such unlawful importation.

"These inferences may be overcome by evidence which tends to establish that in this case the possession of narcotic drugs by the defendant, if any such possession is found, did not involve a violation of the Statute, either because the narcotics were not imported contrary to law or because the defendant had no knowledge of unlawful importation.

"I instruct you that to have possession of narcotic drugs as used in these instructions means that such narcotic drugs, if any, must be in one's control, or under one's dominion.

"Knowledge is a mental element of crime, and is difficult to prove by direct evidence. The existence of such an element may be inferred, however, from acts and conduct.

"It is impossible, as you know, to look into a defendant's mind and determine what existed at a given time.

"Knowledge may be inferred from acts, although each act standing by itself may seem unimportant. This is a question of fact to be determined from all of the evidence."

■ Defendant now argues that he was entitled to have the jury determine the facts of the case, and an instruction in a criminal case as to what evidence will be sufficient to establish any ultimate fact invades the constitutional [4] right of the jury to determine the facts and is therefore error. He says that the legislature has no more right to invade the province of the jury than the court, and it cannot invest the court with the power to do so. He relies upon Chaffee & Co. v. United States, 18 Wall. 516, 545, 85 U.S. 516, 545, 21 L.Ed. 908.

In Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632, the constitutionality of a statutory presumption created by possession of narcotics was sustained. At page 418 of 276 U.S., at page 374 of 48 S.Ct., the court said:

"With regard to the presumption of the purchase of a thing manifestly not produced by the possessor, there is a 'rational connection between the fact proved and the ultimate fact presumed.' (Luria v. United States, 231 U.S. 9, 25, 34 S. Ct. 10, 58 L.Ed. 101; Yee Hem v. United States, 268 U.S. 178, 183, 45 S.Ct. 470, 69 L.Ed. 904). Furthermore there are presumptions that are not evidence in a proper sense but simply regulations of the burden of proof. Greer v. United States, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469. The statute here talks of prima facie evidence but it means only that the burden shall be upon the party found in possession to explain and justify it when accused of the crime that the statute creates. 4 Wigmore, Evidence, § 2494. It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the Government. 4 Wigmore, Evidence, § 2486. In dealing with a poison not commonly used except upon a *doctor's* prescription easily proved, or for a debauch only possible by a breach of law, it seems reasonable to call on a person possessing it in a form that warrants suspicion to show that he obtained it in a mode permitted by the law. The petitioner *cannot* complain of the statute except as it affects him."

The court affirmed a conviction in that case. To the same effect, see Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597.

4. He relies on the Fifth and Sixth Amendments to the Constitution of the United States.

 

We believe that the conclusion which we reach is in accord with established principles and that the criticized instructions are not erroneous.

Our decision in Duncan v. United States, 7 Cir., 23 F.2d 3, is clearly distinguishable from the case at bar. There no statute in regard to the creation of prima facie evidence of a violation was involved. We were of the opinion that the instruction given in Duncan required the defendant to explain to the *satisfaction of the jury* the possession of recently stolen property, which instruction was sufficient to give the jury the impression that the burden had shifted to the accused to *satisfy* the jury of his innocence. Of course, we reversed the judgment of conviction in that case.

For the reasons herein stated, the judgment of the district court is affirmed.

Affirmed.