MICHIGAN CENT. R. CO. v. ZIMMERMAN.

Circuit Court of Appeals, Sixth Circuit.
February 14, 1928.

No. 4858.

1. Master and servant ⬅137(4)—Railroad was liable for death of car inspector caused by movement of cars only if there was unobserved custom to warn or knowledge of danger.

Railroad was not guilty of negligence in connection with car inspector's death by movement of cars in railroad yards, in absence of custom to warn, which was unobserved, or knowledge of danger in which inspector was placed.

2. Master and servant ⬅137(4)—Railroad held not liable under evidence for death of car inspector reporting cars as crippled, caused by intermittent coupling movement made in response to signals.

Evidence held insufficient to support verdict holding railroad liable for death of car inspector, caused by coupling movement of cars in yards, where movement was intermittent and was made in response to signals of conductor and brakeman, who passed through where crippled cars were located without seeing deceased, notwithstanding claim that defendant was negligent, based on theory that deceased had gone back to work on cars, which he had reported as crippled.

3. Evidence ⬅591—Party is not technically bound by testimony of his own witnesses, if there is other conflicting testimony.

Party is not technically bound by his witnesses' testimony, and may argue that his own witnesses were mistaken, if there is evidence in conflict with their testimony.

Knappen, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Action by Elizabeth Zimmerman, administratrix against the Michigan Central Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Robert Newbegin, of Toledo, Ohio (J. Walter Dohany, of Detroit, Mich., and Doyle & Lewis, of Toledo, Ohio, on the brief), for plaintiff in error.

Clyde L. Deeds, of Toledo, Ohio (Deeds & Cole, of Toledo, Ohio, on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. Zimmerman was a car inspector for the Pennsylvania Railroad and was employed in the Michigan Central yards. In this action, dependent on diverse citizenship, brought by his estate against the Michigan Central for damages for his death, there was a judgment against the railroad. This review raises the question whether there was any evidence to support the verdict. The record is very unsatisfactory. The location of the numerous yard tracks is important, but there is no map. The condensation into narrative form is badly done. Upon the vital matters in such a case, and upon the issue of "no testimony," we often need to have the words of the witnesses. This "narrative" has made obscure some details that probably were clear enough originally. However, after an amount of study and comparison which never should have been required of us, and giving the plaintiff the benefit of some obscurities, the vital facts become clear enough.

In the usual fashion of yards, there were many parallel east and west tracks, with a lead track at each end. In this part the parallel tracks were known as No. 1 main,

No. 2 main (next north), and so on. Toward midnight a Michigan Central yard crew, which had been breaking up incoming trains and working on the west lead, had from time to time shoved in on No. 2 main a total of 17 cars, divided into four or five sections as they had separately come in; the cars of each section being coupled together, but the sections being spaced apart as it had happened. The easterly car was alone. One section midway was made up of 8 Pennsylvania cars. The 17 cars were on this track only temporarily, until the way should ·be clear to place them where they belonged. Promptly, as was his duty, Zimmerman inspected these 8 cars. He then reported this inspection to the yard master, saying he had found 2 cripples which he had marked for the repair track. He then inquired about further Pennsylvania cars, and was told that a string of 28 was then on a Big Four track (location not given) and would later be put on No. 1 main. He then went away. A little later the yard engine came into No. 2 from the west lead, moving east, shoved the 17 cars together, coupled them, and later pulled them out to the west and placed them, including the 2 cripples that went to the repair track. Two hours later Zimmerman's body was found between the rails of No. 2.

[1] Plaintiff's sole theory of recovery is that Zimmerman went back to work on these cripples, that the yard crew should have known he was there, or should have ascertained that no one was, and that he was caught and crushed in the course of coupling up the 17 cars. It is alleged that there was a yard custom, when coupling up such strings into a cut, to send men ahead to warn any one who might be in danger there, and that this custom was negligently omitted. Zimmerman can escape the rule of the Aerkfetz Case, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758, only by showing such a custom to warn or knowledge of his danger. There is nothing tending to show the custom.[1] The proofs relied on to show knowledge of danger we will discuss later.

[2, 3] The first point urged is: There is nothing to show that the injury was inflicted by any motion of these 17 cars. It is said in argument that these tracks were constantly busy, with many passing trains, and that the disaster was as likely from another train as from this. The record shows no proof that any cars moved over this track after the 17; complete proofs on the subject were naturally in defendant's possession; the circumstances fairly indicate that the killing was on this track rather than some other; in that situation the jury might infer, we think, that he was killed by some part of this coupling up and hauling out movement of the 17.

Was there notice that Zimmerman might be at work on these two cripples? He had told the yardmaster he had marked these cars for the repair track and he had then inquired about his next work. This marking for the repair track indicated there were heavy repairs, which an inspector could not make. He said they were (or one was) off center. This was a defect which he could not remedy. The only theory, or rather suggestion, of plaintiff, is that, in addition to the "off center," trouble, there may have been coupling or other slight defects which the inspector could and should remedy[2] to get them ready to move. This is mere surmise; and, in view of his conduct in reporting these cars as if he were through with them, and asking about others, it is distinctly improbable.

If there seemed no way in which Zimmerman could have been killed by these cars on this track, unless he was working on the cripples and was caught in the first coupling eastward movement, the uncertainty might be lessened enough to justify an inference; but it is rather more probable that the accident happened otherwise. His lantern and his hook were found—the lantern between No. 1 and No. 2, some 25 feet east of his body. They would naturally have been dropped at the first shock, and the body carried along, thus indicating that the fatal train movement was to the west. It may well have been. There was the first intermittent coupling movement to the east; then the train pulled west some 400 feet, and waited some time for a clear lead; then it pulled out, the rear car moving some 700 feet. At either of these later movements Zimmerman, going about his business may have found his way blocked by these cars, and tried to pass through. The surmise that

---

[1] The testimony relied upon to show such a custom plainly refers to instances where a blue flag was displayed, indicating that a man was at work. Then the approaching train crew would go along the cars to find and warn him.

[2] One witness said: "An off center car is difficult to move. Something would have to be done to get that car in moving shape." And so it is urged that Zimmerman probably went back to that car for that purpose; but the witness also said, "That could be moved onto the repair track, and they would repair it on the repair track," and it is clear, we think, from the witness' whole testimony, that by "in moving condition" he meant in condition for ordinary use, and not in condition to move to the repair track. The car had just moved in; it could move out, as it soon did.

he was killed in that way, or in some way other than according to plaintiff's theory, is at least as reasonable as that theory; and, if so killed, no liability is indicated.

There is another unusual difficulty, emphasizing plaintiff's failure to make a case. The yard train conductor and brakeman, plaintiff's witnesses, say that the eastward coupling movement was intermittent, one section after another, made in response to their signals as they walked ahead; that they walked along between No. 1 and No. 2 over the spot where Zimmerman's lantern was later found, and past the 2 cripples, which the conductor noted for the repair track, as it was his duty to do, and they saw nothing of Zimmerman or his light. If accepted, this is conclusive. Plaintiff is not technically bound by it (American Smelting & Refining Co. v. Hyman [C. C. A.] 16 F.[2d] 39, 43), and might argue that they were mistaken, if he could suggest anything in conflict; but there is nothing. One of these witnesses, on direct examination, spoke of the coupling movement in terms that would be appropriate whether it were continuous or intermittent; on cross-examination he definitely explained it as intermittent. This made no conflict for the jury to settle.

The cases which require some tangible and substantial evidence that the death or injury happened in a way implying negligence, rather than in some other way carrying no such implication, are too familiar for citation. In the latest, decided January 3, 1928, Gulf Railroad v. Wells, 48 S. Ct. 151, 72 L. Ed. ——, the Supreme Court repeats the warning of the Patton Case, 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361, saying that a record must do more than leave the matter in the realm of speculation and conjecture. For a recent review of cases in this court, see Hardy Co. v. Baker (C. C. A.) 10 F.(2d) 277.

A verdict for defendant should have been directed. The judgment is reversed, and the case remanded.

KNAPPEN, Circuit Judge (dissenting). I think the judgment below should be affirmed. As recognized in the majority opinion, there was substantial evidence supporting an inference that deceased was killed by a movement connected with the coupling and hauling away of the 17 cars. I think there was also substantial evidence tending to support a conclusion that defendant was negligent. Half an hour or so before the movement in question decedent told the assistant night foreman (who directed generally the movement in question) that he had found a Pennsylvania crippled car or cars. Decedent told the crew conductor who had immediate charge of the movement in question that one of the cars was "off center." The conductor testified: "That means the trucks are off center. That sort of car would be difficult to move. Something would have to be done to get that car in moving shape, if it was in that condition. But the inspector would not repair an off center car."

While the meaning of this statement is somewhat ambiguous, I think the jury was justified in interpreting it as meaning that the off center car would need temporary repairs or adjustments of some kind before it could safely be removed to a repair track— that is to say, before moving it from No. 2 main. Such was the plaintiff's theory of the case, as appears in its petition. The jury was thus justified in inferring that the conductor understood, or should have understood that decedent was intending to make some temporary repairs, corrections, or adjustments to the crippled car while on No. 2 main, and before the contemplated movement, and that he should have anticipated the probable or reasonably possible presence of decedent under the crippled car, and should have taken precautions to discover whether or not decedent was so engaged—as I think the jury would be justified in inferring from the circumstances surrounding the accident was actually the case. There is to my mind no evidence showing that decedent had completed his investigation, or any evidence which it is open to us to assert would have warranted the men in control of the movement to assume that decedent would not likely be there at work.

I also think the jury would be justified in concluding that no sufficient or reasonable effort was made so to ascertain; for I think the testimony consistent with the view that the trainmen did not go ahead and look for workmen about the cars in advance of the coupling of each of the several groups or sections; and, whether or not there was any such duty by statute or rule, I think the jury would be justified in finding that such was the custom of the yard.

We are not justified in rejecting a given interpretation or inference by the jury merely because *we think* some other interpretation or inference more reasonable or better sustained by the evidence. The jury is the sole judge of the weight of the testimony and the credibility of witnesses. I also think that the record did not require a finding that decedent was negligent. The location in which decedent's lantern and hook were found is not,

to my mind, conclusive as to the direction of the fatal movement of the cars, or of the questions of negligence or contributory negligence. Not only is freedom from negligence presumed (Crucible Co. v. Moir [C. C. A. 6] 219 F. 151, 153), but under the testimony it was open to the jury to find that the "blue flag" rule had been abrogated (Pocohontas v. Johnson [C. C. A. 4] 244 F. 368, 372; Dahlen v. Hines [C. C. A. 7] 275 F. 817, 818, which was a "blue flag" case).

The jury had the right to accept the testimony of the witness Ross, even had it been opposed to the testimony of all the other witnesses. I think the jury's conclusion cannot be rejected as speculative. It is not necessary that it be supported by express testimony; it is enough if the conclusion is *within the fair contemplation of the jury* "supported by the greater weight of probability." L. & N. R. R. Co. v. Lankford (C. C. A. 6) 209 F. 321, 324, 325.

In view of the charge of the court, it should be presumed that the jury adopted the conclusion of fact heretofore referred to as permissible and as sustaining the verdict.