**WIGET v. BECKER, Collector of Internal Revenue.**

No. 10487.

Circuit Court of Appeals, Eighth Circuit.

July 27, 1936.

Chase Morsey, of St. Louis, Mo., for appellant.

Warren F. Wattles, Atty., Tax Division, Department of Justice, of Washington, D. C. (Robert H. Jackson, Asst. Atty. Gen., Sewall Key, John MacC. Hudson, and J. W. Wideman, Sp. Assts. to Atty. Gen., and Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

In this case, appellant, as plaintiff, brought suit to recover $7,341.29 collected from her as additional income tax for the taxable year 1928. In 1928 she sold 448 shares of the capital stock of the Farmers & Merchants Trust Company, engaged in the banking business at St. Louis, Mo., at $400 per share. She claims to have realized a taxable gain in the transaction of $101,573.96. She acquired the stock at

different times by gift, by purchase, or as stock dividend, as follows:

| Date | How acquired | Number of shares |
|------|-------------|------------------|
| Jan. 23, 1913 | By gift | 28 |
| Apr. 30, 1915 | By purchase | 2 |
| Dec. 22, 1917 | By stock dividend | 30 |
| Dec. 24, 1920 | By gift | 164 |
| June 13, 1923 | By stock dividend | 224 |
| | | 448 |

The stock received as stock dividends amounted in all to 254 shares. It had no cost basis, and the two shares purchased in 1915 had a cost basis of $210 per share. There is, therefore, no dispute as to the cost of these 256 shares, and the ŏnly disagreement between the parties is as to the value of the 28 shares acquired by gift January 23, 1913, and the value of the 164 shares acquired by gift December 24, 1920. Appellant contends that the March 1, 1913, value of the 28 shares received by her was $335.55 per share, and that the value of the 164 shares acquired by her December 24, 1920, was $414.26 per share. The commissioner fixed the March 1, 1913, valuè of the 28 shares at $160 per share, and the value of the 164 shares on December 24, 1920, at $140 per share. The difference between the value as so fixed by the commissioner and the amount received by appellant on sale of the stock was taken as the capital gain upon which the additional income tax was levied.

The action was tried to the court without a jury upon written stipulation of the parties. Appellant requested special findings and declarations of law and judgment in her favor. These were denied and proper exception allowed, and the court entered findings and conclusions, which, so far as here material, are as follows:

"9. That prior to March 1, 1913, plaintiff acquired by gift 28 shares of such capital stock of Farmers & Merchants Trust Company which stock on March 1, 1913, had a fair market value not in excess of $160.00 per share.

"10. That on December 24, 1920, plaintiff acquired by gift 164 shares of such capital stock of said Farmers & Merchants Trust Company, which stock on December 24, 1920, had a fair market value not in excess of $140.00 per share."

As conclusions of law, the court declared:

"1. That no substantial evidence has been introduced which will support a judgment for the plaintiff.

"2. That plaintiff has failed to sustain the burden of proof resting upon her to establish the illegality of the collection by the defendant of the tax sought to be recovered.

"3. That plaintiff has failed to overcome the prima facie case as established by the assessment duly made by the Commissioner of Internal Revenue.

"4. Under the evidence introduced by plaintiff the defendant is entitled to judgment.

"5. Under the uncontradicted evidence. the defendant is entitled to judgment.

"6. That plaintiff is not entitled to recover any amount in this action."

Judgment was thereupon entered, dismissing plaintiff's action, and this appeal has brought the matter to this court. The questions presented, as stated by counsel for appellee in their brief, are:

"1. What was the fair market value as of March 1, 1913, of 28 shares of the capital stock of the Farmers and Merchants' Trust Company?

"2. What was the fair market value as of December 24, 1920, of 164 shares of the capital stock of the Farmers and Merchants' Trust Company?"

No question is raised as to the sufficiency of the proceedings had and taken in the lower court to entitle the appellant to a review of these questions.

It is apparent from the conclusions of law entered by the lower court that great stress was placed upon the presumption of correctness of the determination by the commissioner; in fact, counsel for appellee, in their brief, say: "What the court actually did was to accept as correct the value fixed and determined by the commissioner." It is accepted law that the commissioner's finding of value is entitled to a presumption of correctness. An assessment which he makes is prima facie correct, and the burden is on the taxpayer to overcome the presumption of its correctness. Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367; Public Opinion Pub. Co. v. Jensen (C.C.A.8) 76 F.(2d) 494. The presumption, however, is a rebuttable one, and will only support a finding in the absence of

any substantial evidence to the contrary. St. Louis Union Trust Co. v. Becker (C. C.A.8) 76 F.(2d) 851, affirmed 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35. Where the act of the commissioner is reviewed judicially, his findings of fact in making an assessment, as distinguished from his determination involving administrative discretion, constitute only "prima facie evidence." Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 589, 72 L.Ed. 985; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184.

The presumption of correctness is in the class of the "burden of proof presumption." Morrison v. People of California, 291 U. S. 82, 54 S.Ct. 281, 78 L.Ed. 664; Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632. The party against whom it is invoked must fail if he does not produce evidence against it. It is often referred to in the books as the true presumption. "A true presumption is not evidence, though it supplies its place and requires the other party to proceed with the negative. Unless he does, he loses; when he does, the presumption is out of the case, and the issue is open." United States ex rel. v. Pulver (C.C.A.2) 54 F.(2d) 261, 263. See, also, United States v. Le Duc (C.C.A.8) 48 F.(2d) 789; Fidelity & Cas. Co. v. Niemann (C.C.A.8) 47 F.(2d) 1056; Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 193, 80 L.Ed. 229.

In considering the effect of a presumption created by statute, the Supreme Court in Del Vecchio v. Bowers, supra, reversed the lower court, saying: "The act under consideration, however, does not leave the matter to be determined by the general principles of law, but announces its own rule, to the effect that the claimant, in the absence of substantial evidence to the contrary, shall have the benefit of the presumption of accidental death. The employer must rebut this prima facie. The statement in the act that the evidence to overcome the effect of the presumption must be substantial adds nothing to the well-understood principle that a finding must be supported by evidence. Once the employer has carried his burden by offering testimony sufficient to justify a finding of suicide, the presumption falls out of the case. It never had and cannot acquire the attribute of evidence in the claimant's favor. Its only office is to control the result where there is an entire lack of competent evidence. If the employer alone adduces evidence which tends to support the theory of suicide, the case must be decided upon that evidence. Where the claimant offers substantial evidence in opposition, as was the case here, the issue must be resolved upon the whole body of proof pro and con."

The conclusions of law in the instant case show that the lower court gave to the presumption of correctness of the commissioner's finding "the attribute of evidence in the claimant's favor." Here, both parties submitted substantial evidence on the issue before the court, and in that state of the record the presumption passed out of the case.

A Mr. Wiget, who had been connected with the Farmers & Merchants Trust Company as vice president and director at the time of its organization, and who became its president in 1924 and remained such until 1928, testified as to the value of this stock. He gave the amount of the capital stock in March, 1913, its surplus and undivided profits, its total deposits, and its earnings from 1911 to 1915, inclusive. He showed that during these years, the capital remained at $100,000; in 1917 it was increased to $200,000 by a declaration of 100 per cent. stock dividend declared from the earnings; that there was another 100 per cent. stock dividend declared from earnings in 1923. He gave a description of the location of the bank, the value of its real estate, the steady growth of its business, and stated that in 1920 the deposits had increased to $4,365,460; that its capital surplus and undivided profits were $290,000. He gave all the detailed facts with reference to the bank's assets, its business, its prospects, its earnings, and its good will. From all the facts produced, he expressed the opinion that in 1920 the stock was worth $400 per share, and in 1913 it was worth $350 per share.

Mr. Joseph L. Rehme, who had been engaged in the banking business in St. Louis since 1907, testified that he was familiar with the Farmers & Merchants Trust Company from the time of its organization and watched its history very closely. He testified that in 1928, the Lafayette South Side Bank, of which he was an officer, purchased all the stock of the Farmers & Merchants Trust Company at $400 per share. The purchasing company valued the building at $275,000, and within three or four months later sold it for $285,000. He gave all the facts upon which he

based an opinion that the stock in question was worth, when acquired by appellant, $351 per share.

Each of these witnesses made some allowance for the good will of the business.

On behalf of appellee, Mr. Louis G. Kurtzeborn testified that he was a revenue agent in the employ of the Treasury Department; that he made an investigation of the value of the bank stock as of March 1, 1913, and March 24, 1920. He took the earnings of the bank from 1909 to 1913, inclusive, found that the average yearly earnings were approximately $15,452.04, which he capitalized at 6 per cent., giving him a value of $257 per share as of March 1, 1913. By the same process, he found that the value of the stock on December 24, 1920, was $262.53 per share. He was then shown a publication called the "Financial and Commercial Chronicle." This paper showed the capital of the Farmers & Merchants Trust Company for 1913, $100,000; surplus and undivided profits, $56,398; deposits, $782,636; "bid price $160.00, asked, no quotation." The witness produced Poor's Manual. This showed the bid price from 1913 to 1922, inclusive, ranging from $140 to $225. While these publications were offered and received in evidence, over objection, Mr. Wideman, in charge of the suit on behalf of the government, with commendable frankness and fairness, stated in open court, so that it appears a matter of record, as follows: "I think I will state that the Bureau of Internal Revenue accepted the bid prices only in arriving at the value of this stock, and that we really aren't contending for that, but we are contending for the value as placed by the Revenue Agent, Mr. Kurtzeborn."

On cross-examination, Mr. Kurtzeborn stated that after he had done all his work in attempting to arrive at the values for the years in question, the government reduced them to the bid price. On redirect examination, Mr. Wideman said to the witness: "The Government is putting them back now, is it not?"

If the presumption of correctness had not already disappeared upon the introduction of evidence pro and con on the issue before the court, it seems clear that the statement by Mr. Wideman was a clear and unequivocal abandonment of the presumption. Oscanyan v. Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539; Christy v. Atchison, T. & S. F. Ry. Co. (C.C.A.8) 233 F. 255, 256;

Tevis v. Ryan, 13 Ariz. 120, 108 P. 461; In re Level Club, Inc. (D.C.) 46 F.(2d) 1002; Harniska v. Dolph (C.C.A.9) 133 F. 158.

In Oscanyan v. Arms Co., supra, the court said: "The power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced."

In Christy v. Atchison, T. & S. F. Ry. Co., supra, it is said: "It is well settled that short of a compromise of a client's claim or a confession of judgment the authority of counsel in a case extends generally to all the customary incidents of litigation and embraces all agreements, stipulations, and admissions appertaining to its conduct through the courts."

Brush from this case the presumption of correctness, and there remains no substantial evidence upon which the judgment can stand. It stands admitted that the findings of the commissioner were bottomed upon two publications which purported to reflect what was bid for this stock. However, no sales seem to have been made. Standing alone, these so-called offers were of no value. They came from undisclosed sources; whether based on reliable information, whether induced by the hope of a beneficial purchase, or whether seasoned judgment dictated them, does not appear. An offer to purchase personal property at a given price, unaccompanied by any evidence that the offer was made by one who was ready or able to comply with it, is of no probative value. In Clarke v. Hot Springs Elec. Light & Power Co. (C.C. A.10) 55 F.(2d) 612, the court held that testimony concerning offers for property were rightfully excluded. In Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 115, 48 L.Ed. 211, in speaking of an offer as evidence, it is said: "Upon principle, we think the trial court was right in rejecting the evidence. It is, at most, a species of indirect evidence of the opinion of the person making such offer as to the value of the land. He may have so slight a knowledge on the subject as to render his opinion of no value, and inadmissible for that reason. He may have wanted the land for some particular purpose disconnected from its value. Pure speculation may have induced it, a willingness to take chances that some new use of the land might, in the end, prove profitable. There is no opportunity to cross-examine the per-

son making the offer, to show these various facts. Again, it is of a nature entirely too uncertain, shadowy, and speculative to form any solid foundation for determining the value of the land which is sought to be taken in condemnation proceedings. * * * Evidence of this character is entirely different from evidence as to the price offered and accepted or rejected for articles which have a known and ready sale in the market. The price at the stock exchange of shares of stock in corporations which are there offered for sale or dealt in is some evidence of the value of such shares. So evidence of prices current among dealers in those commodities which are the subject of frequent sales by them would also be proper to show value. This evidence is unlike that of offers to purchase real estate, and affords no ground for the admissibility of the latter."

Eliminate these publications showing these offers from the testimony, and there is no evidence tending to sustain the value placed upon this stock. According to the government's own witness, and the concession made by able counsel, this stock, under the evidence, could not reasonably have been given a value of less than $257 per share for the 28 shares acquired by gift January 23, 1913, and $262.53 per share for the 164 shares acquired by gift December 24, 1920. We are not saying that the evidence compelled such a valuation, but that there is no substantial evidence warranting a lesser value.

■ It is urged, however, that the corporate capital stock return showed a value of $135 per share as of September 30, 1920. This was based upon the capital surplus and undivided profits, as shown by the books. The return did not call for anything else, or for the value of the stock.

Mr. Rehme, who was also interrogated about the matter, on cross-examination points out that the valuation did not take into account any other assets, either appreciation or depreciation.

It is to be observed first that the appellant was not a party to the return. It was pure hearsay as far as she was concerned. The Supreme Court, in Ray Consolidated Copper Co. v. United States, 268 U.S. 373, 45 S.Ct. 526, 69 L.Ed. 1003, held that the "capital stock" means the entire potentiality of the corporation to profit by the exercise of its corporate franchise, and that the capital stock, net assets, and share of stock are entirely different things, and the

value of one bears no fixed or necessary relation to the value of the other. The evidence may have been admissible as having some bearing upon the credibility of the witnesses who had been connected with the bank. It, however, had no tendency to prove the truth of the subject matter. Southern R. Co. v. Gray, 241 U.S. 333, 36 S.Ct. 558, 560, 60 L.Ed. 1030; Southern Pac. Co. v. Kauffman (C.C.A.9) 50 F.(2d) 159; Constitution Indemnity Co. v. Lane (C.C.A.6) 67 F.(2d) 433; Riggs v. Metropolitan Street Railway Co., 216 Mo. 304, 115 S.W. 969, 979.

In Riggs v. Metropolitan Street Railway Co., supra, the Supreme Court of Missouri, in an opinion by Judge Lamm, said: "His admission made off the stand to plaintiff's counsel in that behalf might discredit him as a witness, but would not prove the fact or bind defendant."

In Southern R. Co. v. Gray, supra, in speaking of a cross-examination concerning prior contradictory statements, it is said: "Of course, the contradictory statements can have no legal tendency to establish the truth of their subject-matter."

The tax report by the bank could not be considered as substantive evidence of value as against the appellant.

In the final analysis, it will be found that there is but little difference between the basic facts used by the witnesses for plaintiff and the government's expert, Kurtzeborn. The difference is that the witnesses for appellant added to the value of the stock a good will or going concern value. They testified that this was, by well-established rule, determined by multiplying the deposits by 5 per cent. If this good will value be eliminated, the values given by plaintiff's witnesses will be practically the same as those given by Mr. Kurtzeborn.

■ Ordinarily, a party is bound by the testimony of his own witnesses. Yellow Cab Co. v. Rodgers (C.C.A.3) 61 F.(2d) 729. To be sure, the evidence might justify the argument that a witness was mistaken, and the trier of fact may so find, but there must be evidence of mistake. Michigan Central R. Co. v. Zimmerman (C.C.A.6) 24 F.(2d) 23. There is no contention that Mr. Kurtzeborn made any mistake in his testimony, or that the facts upon which counsel have apparently acted in making the statement and admission of record are not true. There was before the

lower court not only the deliberate and studied testimony of Mr. Kurtzeborn, but there was the deliberate, judicial admission of counsel. A judicial admission has been held to be conclusive on the party by whom it was made, or to whom it is attributable. The statements and the evidence had all the characteristics of a judicial admission. Wigmore on Evidence, §§ 2588–2590; Clark-Montana Realty Co. v. Butte & Superior Copper Co. (D.C.) 233 F. 547. A contention inconsistent with a formal admission in the lower court will not ordinarily be considered on appeal. United States Shipping Board Emergency Fleet Corporation v. South Atlantic Dry Dock Co. (C.C.A.5) 19 F.(2d) 486; United States v. Leerburger (C.C.A.2) 160 F. 651. As said by Mr. Wigmore, in his work on Evidence, section 2590: "The vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, i. e., the prohibition of any further dispute of the fact by him, and of any use of evidence to disprove or contradict it."

In this state of the record, it seems clear that the findings of value by the trial court are not sustained by any substantial evidence.

The judgment appealed from is therefore reversed, and the cause is remanded to the lower court, with directions to grant appellant a new trial.