Frances M. CULLERS, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

C. H. CULLERS, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

Nos. 15501, 15502.

United States Court of Appeals
Eighth Circuit.

Oct. 18, 1956.

Jess W. Van Ert, Kansas City, Mo. (John E. Park, Albert F. Hillix, and Gage, Hillix, Moore & Park, Kansas City, Mo., on the brief), for petitioners.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Robert N. Anderson and Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before WOODROUGH, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

C. H. Cullers and Frances M. Cullers, husband and wife, hereinafter called taxpayers, have petitioned this court to review separate decisions of the Tax Court determining deficiencies in gift tax due from them for the year 1950. This court has jurisdiction. § 7482, Internal Revenue Code of 1954, 26 U.S.C.A.

Taxpayer C. H. Cullers, in 1950, by gift conveyed to his sons a 1500 acre farm near Trenton, Missouri, the gift also including some personal property. The taxpayers consented to have the gift considered as made half by each of them as permitted by section 1000(f) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. Gift tax returns were filed valuing the gift real estate at $26 per acre, and the tax due as disclosed by the re-

turns was paid. The Commissioner made a gift tax deficiency determination, finding the fair market value of the gift land to be $47.50 per acre. The Tax Court determined the fair market value to be $36 per acre. The principal question that confronts us upon review is whether the decisions of the Tax Court placing a value of $36 per acre upon the gift land are clearly erroneous.

The value of the subject matter of a gift at the date of the gift shall be considered the amount of the gift. § 1005, Internal Revenue Code of 1939. Section 86.19, Treasury Regulations 108, provides in part as follows:

> "* * * The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * *"

We now look to the evidence to determine whether the valuation placed upon the gift real estate by the Tax Court is supported by substantial evidence.

Before making the gift here involved, the taxpayers sought the advice of their attorney. The attorney suggested that an independent appraisal of the gift property be made. Taxpayers authorized the attorney to arrange for such an appraisal. Three qualified appraisers—Miller, a federal farm loan secretary, who dealt extensively with federal farm loans; Escheinheimer, an agricultural college graduate, a farm manager, farm owner and operator; and Helmendollar, a farm owner, businessman, and land trader—were selected by the attorney to make the appraisal. None of the appraisers were business associates or close personal friends of the taxpayers. All lived in the locality of the gift farm and were familiar with the farm and local economic conditions. The qualifications of the appraisers are not seriously challenged. After thoroughly inspecting the farm, Helmendollar and Escheinheimer appraised the land at $39,000, or approxi-

mately $26 per acre, the figure used by the taxpayers in their gift tax returns. Miller's appraisal was $1,000 less. Affidavits of each appraiser are attached to the gift tax returns. Other witnesses produced by taxpayers at the trial spoke highly of the qualifications of the appraisers, and all placed the value of the gift land at $26 per acre or less. With reference to testimony offered by the taxpayers the Tax Court states:

> "* * * In support of their valuation, petitioners offered the appraisals made at the time of the gift by the three persons selected by Dr. Cullers [1], and also the testimony, given at the hearing or by deposition, of various persons who were businessmen or farm operators in the area where Dr. Cullers' farm was located, and who were generally familiar with farm values in the area. The opinions of the witnesses either corroborated those of the appraisers, that the farm land had a fair market value of $26 an acre, or were to the effect that the appraisers' estimates were too high. * * *"

The Tax Court in its opinion further states:

> "On the basis of all of the evidence, we do not think that petitioners have proven the per acre value of $26 they contend for. Yet the testimony of their witnesses has shown that respondent's valuation is too high. Considering the description of the farm and its condition as testified to by petitioners' witnesses, the appraisers' and witnesses' opinions as to value, the possibility that existed in 1950 of an assessment against a part of the farm acreage to meet the cost of building a bridge in the drainage district (which would undoubtedly have entered into the amount a buyer would have been willing to pay), and the price bid for the farm adjoining Dr. Cullers', and all other relevant facts of record we

---

1. As heretofore pointed out, the undisputed evidence discloses that Dr. Cullers authorized his attorney to select the appraisers, and the attorney made the selection.

have found the fair market value in 1950 of the farm land given by petitioners to their sons to be $36 an acre."

What evidence is there before us to support the $36 per acre value fixed by the Tax Court? Since the Tax Court has found the taxpayers' evidence has overcome the presumption of correctness of the Commissioner's deficiency determination, the Commissioner can place no reliance upon his deficiency determination. The presumption of correctness is a rebuttable presumption and will support a finding in favor of the Commissioner only in the absence of any substantial evidence to the contrary. When the presumption has been overcome by evidence the presumption vanishes. Wiget v. Becker, 8 Cir., 84 F.2d 706; A & A Tool & Supply Co. v. Commissioner, 10 Cir., 182 F.2d 300; Mertens Law of Federal Income Taxation, Vol. 9, § 50.-71.

The only evidence introduced by the Commissioner was some evidence as to the assessed value of the real estate for local tax purposes. The Tax Court attached no importance to this evidence, stating that no correlation between tax value and market value was shown. The court states, "The testimony offered by respondent's witnesses, on the other hand, was of no help in supporting respondent's determinations of value."

The only evidence before us that could in any way tend to support a finding of valuation in excess of $26 an acre is the cross-examination of Overton. This cross-examination is not in the record, but appears in the supplemental record incorporated in the Commissioner's brief. Taxpayers have filed a motion to correct the record and eliminate from the record and the Commissioner's brief all references to Overton's cross-examination. Overton was the owner of a farm adjoining the gift land. His deposition was authorized and taken before trial at the instance of the taxpayers. Taxpayers rested without offering the deposition. The Commissioner attempted to offer Overton's deposition. Counsel for taxpayers objected to the offer unless the Commissioner made Overton the Commissioner's witness. This the Commissioner agreed to do. Taxpayers then objected to the admission of Overton's cross-examination.[2] We have serious

2. From Appendix to Commissioner's brief in opposition to petitioners' motion pertaining to Overton's testimony, it would appear that the following colloquy took place between court and counsel regarding the Overton deposition:

"Mr. Bergbauer: We offer his witness.

"Mr. Hillix: As your witness?

"Mr. Bergbauer: As our witness, that is all right.

"The Court: With that understanding I will admit the deposition.

"Mr. Hillix: In view of those circumstances I believe the cross examination would not be admissible.

"Mr. Bergbauer: I think the entire testimony ought to go into the record. We are not trying to hide anything here. We want to get the entire record clear here.

"Mr. Hillix: He has adopted this man as his witness and he certainly has no right to cross examine his own witness.

"The Court: Well, I take it he would be bound by whatever the witness said. But it is very difficult for me to conceive—I mean, the situation itself is anomalous because the deposition is initiated by the petitioner, petitioner had direct examination and then there was cross examination.

"Mr. Hillix: Well, we have not offered these other depositions because we didn't believe that these people qualified as experts and we didn't believe that their testimony was competent or, as a matter of fact, relevant. Therefore, we have rested our case without presenting these witnesses. Now, when the Respondent adopts—he could have very easily subpoenaed the man here if he wanted him as his witness, but I have no objection to his offering his direct examination, but he certainly doesn't have the right, after adopting the man as his own witness, to cross examine him.

"The Court: Well, that is my feeling too.

"Mr. Bergbauer: Well, we cross examined him when he was his witness.

"The Court: Yes, but the petitioner is not offering him as a witness and not offering the deposition, and if you want it in I will have to cut out your cross examination. I don't know what situation

doubt whether Overton's cross-examination is part of the record in these cases. It would appear from the colloquy between counsel, set out in footnote 2, that the court permitted the Commissioner to introduce in evidence Overton's direct examination only. It is noted that Overton was a witness and that no showing, so far as the record discloses, was made by the Commissioner that he had met any of the requirements of Rule 26 (d) (3), Fed.Rules Civ.Proc. 28 U.S.C.A., pertaining to the admission of depositions of witnesses, nor is there any finding by the court that the Commissioner had met any such requirements. Absent a showing entitling the Commissioner to introduce the deposition, there appears to be considerable merit to taxpayers' contention that the admission of the deposition is limited to the direct examination of Overton. This is the extent to which the taxpayers agreed to the reception of the deposition. The court clearly limited the offer of the deposition to direct examination, and the Commissioner agreed to this limitation.

In any event, we have carefully examined Overton's testimony as a whole, including the direct examination and the cross-examination, and it is our opinion that Overton's testimony does not afford substantial evidence to support the court's valuation finding. The Overton testimony appearing in the cross-examination, which is relied upon by the Tax Court, is a bare statement that Overton was offered $49 per acre for his adjoining farm in 1950. Overton testified and the Tax Court concedes that Overton's farm, when he acquired it in 1938, was a substantially better farm than the gift farm. It is likewise undisputed that between 1938 and 1950 Overton expended $30 per acre improving his farm, which improvements without doubt greatly increased the difference in value between the Overton farm and the gift farm. There was also a potential liability for a drainage district assessment against taxpayers' farm for some $15,000, because of a $150,000 suit pending against the drainage district for liability for restoring a bridge. The Tax Court conceded that this litigation had a bearing on the value of the gift land.

It would appear that because of the marked difference in the land here involved and the Overton land, the vast difference in the state of the improvements on the two farms, and the drainage district potential liability upon the gift farm, the purported offer of $49 an acre Overton received for his farm in 1950 would, under the record here, have little weight on the value of taxpayers' land. Indefinite evidence as to offers received for property is not substantial evidence of value. Wiget v. Becker, supra, 84 F.2d at page 708; Sharp v. United States, 191 U.S. 341, 348, 24 S.Ct. 114, 48 L.Ed. 211; Merchants Motor Freight, Inc., v. Downing, 8 Cir., 227 F.2d 247, 250. Evidence as to offers received for other property is even less satisfactory, particularly in the absence of a showing that the property upon which the offers were received is of substantially similar quality and value as the property the valuation of which is in issue.

We do not believe that the evidence of Overton, when fully considered in the light of the record, can be considered substantial evidence to support the $36 per acre valuation made by the Tax Court. As heretofore stated, the evidence of the taxpayers supports their contention that the value of the gift land did not exceed $26 per acre. It is true that the trier of facts is not in all cases bound to accept the uncontradicted opinion of experts. Where under the record the court can fairly say that, because of interest of the witnesses or improbability of the testimony, the witnesses' testimony is not entitled to credit, the testimony may be disregarded. See Gloyd v. Commissioner, 8 Cir., 63 F.2d 649; Heil Beauty Supplies v. Commissioner, 8 Cir., 199 F.2d 193. In the Gloyd case the

that is going to leave the deposition in though. If you want it that way that is the way I will take it.

"Mr. Bergbauer: We will leave it in.
"The Court: All right."

court found the Board had before it independent evidence which tended to contradict the opinions of the experts. The Heil Beauty Supplies case held that the court could draw its conclusions from the evidence as a whole and was not bound by testimony of interested witnesses. In Planters' Operating Co. v. Commissioner, 8 Cir., 55 F.2d 583, this court held that it was reversible error for the Board of Tax Appeals to disregard the evidence of three competent hotel men regarding the value of a hotel lease.

The trier of facts under proper circumstances may reject expert testimony and reach a conclusion based upon its own knowledge, experience, and judgment. However, it must fairly appear from the record that the fact finder had knowledge and experience relative to the subject matter. The expert opinion can not be arbitrarily disregarded. Planters' Operating Co. v. Commissioner, supra; Loesch & Green Construction Co. v. Commissioner, 6 Cir., 211 F.2d 210; Pittsburgh Hotels Co. v. Commissioner, 3 Cir., 43 F.2d 345; A & A Tool & Supply Co. v. Commissioner, supra; Mertens Law of Federal Income Taxation, Vol. 9, § 50.-62 including pocket supplement. Here there is no evidence that the Tax Court had any knowledge of land values or local economic conditions in the Trenton, Missouri, territory upon which it could properly make its own determination of value.

We can find nothing in the record as a whole to support any conclusion that the evidence of the taxpayers' witnesses is unworthy of belief. The Tax Court assigned three reasons why it could not fully accept the taxpayers' evidence of value, namely (1) the basis upon which the witnesses reached their valuations is not adequately explained; (2) the benefit of appraisals by three persons is lost by the similarity of values fixed by the appraisers; and (3) the experience of many of taxpayers' witnesses was in the lending field which may have inclined them to be somewhat conservative in their estimation of value.

We do not consider any of the foregoing assigned reasons, either individually or collectively, an adequate basis for disregarding the taxpayers' evidence. The evidence shows that the land was carefully examined and inspected. The Tax Court in its findings thus describes the land:

" * * * Of the approximately 1,500 acres making up the farm, about 275 acres were waste land; about 700 acres were bottom land with brush, which was untillable in its condition in 1950; and about 600 acres were improved upland. When transferred in 1950 the farm was in a generally poor condition, and its productivity was low. Not enough feed was produced to take care of the cattle and livestock on the farm. The property had on it a number of buildings, including tenant houses and barns, that were in a state of disrepair. * * *"

This information was obtained from the testimony of taxpayers' witnesses.

While the appraisers did not differ to any marked extent on the valuations they placed on the various items of property, there are some minor differences. The appraisers were familiar with local conditions. All had carefully inspected the property. They had compared observations with each other. It is not particularly surprising that they came up with substantially similar valuations. We do not consider the fact that some of the witnesses had extensive experience in the farm loan business detracts in any way from their ability to determine market value.

As heretofore pointed out, the Tax Court accepted the taxpayers' evidence to the extent that it found the evidence sufficient to overcome the presumption of correctness of the Commissioner's determination. It also rejected the Commissioner's determination of value of livestock, accepting the value placed upon the livestock by the same appraisers who valued the real estate. The Commissioner has not appealed from the Tax Court's determination in favor of the taxpayers upon the valuation of the livestock. However, the fact that the court

accepted the views of the appraisers as to the personal property is of some significance upon the issue of credibility.

■ Since substantial reliance was placed upon the evidence of the taxpayers' expert witnesses in the respects hereinabove set out, and since the record does not disclose the Tax Court had any personal knowledge of local values and conditions upon which it could form its own opinion as to value, there is no valid reason why the testimony of the taxpayers' expert witnesses should be discredited.

■ It would seem that, if the valuation placed upon the real estate by the taxpayers and their witnesses was too low, the Commissioner could have produced some qualified witnesses who would have said so. The lack of such evidence operates against the Commissioner's contentions. See Baltimore Dairy Lunch, Inc., v. United States, 8 Cir., 231 F.2d 870; Mayson Manufacturing Co. v. Commissioner, 6 Cir., 178 F.2d 115.

■ An appellate court should not substitute its judgment for that of the trial court when there is substantial evidence to support the decision of the trial court. However, even though there may be evidence to support the trial court's finding, the finding is clearly erroneous when the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; Baltimore Dairy Lunch, Inc., v. United States, supra.

■ We have serious doubt whether there is any evidence to support the valuation arrived at by the Tax Court. Overton's evidence, even if considered, does not constitute substantial evidence to support the Tax Court's decisions. After careful review of the entire record we are left with the firm conviction that the Tax Court erred in fixing the value of the gift land at $36 per acre, and consequently the decisions of the Tax Court are clearly erroneous.

The decisions of the Tax Court are reversed, and these cases are remanded to the Tax Court for further proceedings not inconsistent with the views expressed in this opinion.