956 F.2d 276
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Craig Lee SOLOMON, Defendant-Appellant.
 No. 91-50070.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 3, 1991.
Decided Feb. 14, 1992.
 
 Before JAMES R. BROWNING, BOOCHEVER and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I.
 
 2
 Solomon, convicted of violating 18 U.S.C. § 2252(a)(2) by knowingly reproducing and distributing a videotape showing minors engaged in sexually explicit activity, argues the district court erred in refusing to conduct private, individual voir dire to determine whether prospective jurors had had experience with child sexual abuse. This court will not find a voir dire examination inadequate unless the district court abused its discretion by failing "to ask questions capable of revealing prejudices of prospective jurors." United States v. Boise, 916 F.2d 497, 504 (9th Cir.1990).
 
 
 3
 Solomon argues it would "defy common sense" to expect venire members to divulge publicly the sensitive information that they had been molested as children. Solomon offered no support for his position, and the trial judge noted that in his experience, jurors were "very vocal" about revealing they had been victims of child sexual abuse.
 
 
 4
 During voir dire, the court informed the venire panel:
 
 
 5
 Now, the only question I am going to ask you in public with regard to this next area will require a yes or no answer. If there is a yes answer, then I will note that, and I will question that juror independently, outside the presence of the other jurors.
 
 
 6
 The question I am asking at the present time, collectively, that only requires a yes or no answer, is as follows. Were any of you the victim of any form of sexual or other physical or emotional abuse as a child?
 
 
 7
 The court also asked the jurors collectively whether they or any of their family members had been victims of the "type of offense charged" in the case; whether they could give all sides a fair and impartial trial if selected as jurors; whether the nature of the charges caused them to doubt whether they could give all sides a fair and impartial trial; and whether they or any relatives or close friends had ever been victims of crime.
 
 
 8
 The court's use of these general, rather than specific, questions, coupled with assurances that details could be divulged in private, constituted an adequate voir dire examination. See, e.g., United States v. Payne, 944 F.2d 1458, 1474-75 (9th Cir.1991) (when judge asked prospective jurors collectively whether they or any family members had been victims of crime, seven indicated personal or familial experience with child molestation; that question, plus question as to whether the nature of the charges would impede the jurors' ability to remain impartial, were sufficient); Boise, 916 F.2d at 504 (asking jurors collectively whether they had experience with child abuse, questioning individually jurors who responded affirmatively, and offering to talk privately in chambers with any juror who answered that he or she had been a child abuse victim, was sufficient on voir dire to reveal any juror prejudice).
 
 II.
 
 9
 Solomon argues that because he offered to stipulate that he knowingly reproduced the videotape he sent "Cathy" (the alias used by undercover agent Ackerman); that the individuals shown were minors; and that the minors were engaged in sexually explicit activity--the three facts the government sought to prove by showing a portion of the videotape to the jury--the only purpose served by showing the segment was to inflame and prejudice the jury in violation of Fed.R.Evid. 403.
 
 
 10
 The government may "refuse to accept a defense counsel's stipulation and elect instead to prove the elements of the offense by introducing probative evidence." United States v. Chambers, 918 F.2d 1455, 1462 (9th Cir.1990). The videotape segment was probative; the facts the government sought to prove with it were elements of the crimes with which Solomon was charged.
 
 
 11
 Solomon argues the danger of unfair prejudice outweighed the tape segment's probative value. See United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir.1990) (evidence should be excluded under Fed.R.Evid. 403 if probative value is substantially outweighed by unfair prejudice). The one minute segment shown was shocking, as the prosecution conceded, and it was not strictly necessary to show it to the jury three times to establish the facts sought to be proved. However, to avoid unfair prejudice the trial court questioned the venire members about their ability to consider the case fairly and impartially after viewing videotapes depicting children engaged in "graphic" and "explicit" sexual conduct. Further, the jury twice viewed a segment of the tape Ackerman sent Solomon depicting equally shocking material--an adult male engaged in explicit sexual activity with a child--but acquitted him on the charge involving that tape. Assuming error, we cannot say it was more likely than not to have affected the verdict. See United States v. Emmert, 829 F.2d 805, 808 (9th Cir.1987) (evidentiary rulings reversed only if error would have been more likely than not to affect verdict).
 
 III.
 
 12
 Solomon maintains the district court abused its discretion in refusing to admit into evidence Nancy Friday's best-selling book about women's sexual fantasies, "My Secret Garden," since the refusal "prejudicially deprived [him] of material evidence critical' to his defense," United States v. Ives, 609 F.2d 930, 933 (9th Cir.1979) (citation omitted): that he corresponded with "Cathy" for the legitimate purpose of collecting sexual fantasies to include in a similar book. Even assuming arguendo the defense was valid, the admission of the book was not critical to it, given that Solomon was allowed to show the jury the book, explain without contradiction that it was a mainstream best seller about women's sexual fantasies, and testify he was gathering fantasies to produce a similar work.
 
 IV.
 
 13
 Solomon contends the district court erred by refusing to allow his wife Diane to testify that in late 1988 or early 1989, she and Solomon discussed his plan to go to the police with his suspicions that "Cathy" was a child abuser. He argues the testimony was admissible under Fed.R.Evid. 803(3) (the state of mind exception to the rule against hearsay admission) to show he intended to discuss his concerns with the police several months before he was arrested, and thereby to rebut the prosecution's argument that he went to the police only after he was arrested in an attempt to concoct an ex post facto defense. Diane's testimony as to the timing of the visit also would have supported Solomon's assertion that his intent in sending the sexually explicit tape to "Cathy" was to elicit a similar tape from her so he could give the police evidence that would confirm his suspicions.
 
 
 14
 The "private sting operation" defense Solomon tendered requires the defendant's reasonable belief that he committed the charged conduct while acting as an agent for law enforcement authority. See United States v. Mason, 902 F.2d 1434, 1439-40 (9th Cir.1990). Solomon conceded he went to the police after he reproduced and mailed the tape to Ackerman. Thus, he could not reasonably have believed when he copied and sent the tape that he was acting as an agent for the police. Once he spoke with the police, it would not have been unreasonable per se for Solomon to believe he was acting as their agent when he pressed Ackerman to send him back a tape, but he was acquitted of the charge of causing a tape to be mailed. Any error in refusing to admit Diane Solomon's testimony was therefore harmless.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3