In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2329

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES T. MORRIS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07–CR–313–001—**J.P. Stadtmueller**, *Judge*.

SUBMITTED NOVEMBER 13, 2008—DECIDED DECEMBER 5, 2008

Before POSNER, ROVNER, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to attempting to transport a minor (a girl of 15) across state lines to engage in illegal sexual conduct, in violation of 18 U.S.C. §§ 2423(a), (e), and was sentenced to 10 years in prison. But he reserved the right to appeal the district court's refusal to dismiss the indictment. The ground of his appeal is that the person he thought was a minor was

neither a minor nor a law enforcement officer posing as one but was instead a private citizen. His lawyer has filed an *Anders* brief asking us to let him withdraw from representing the defendant because neither that nor any other ground of appeal is nonfrivolous. *Anders v. California*, 386 U.S. 738 (1967). We agree, but as the precise issue presented by the appeal has not arisen before, we shall explain our decision in this brief opinion.

In October of 2007 the defendant attempted to contact a minor at the minor's MySpace page. The minor's mother, Mrs. Runningwolf, responded to this unwelcome development by creating her own MySpace page, in which she pretended to be a 15 year old named "Kandice" (not her daughter's name). On October 22, the defendant began emailing "Kandice" and they began chatting online on almost a daily basis. He asked her to have sex with him, and she agreed. On November 2, Mrs. Runningwolf reported him to the FBI. Two days later he bought a bus ticket for "Kandice" to travel to meet him, and mailed it to her. The FBI picked up the ticket and assumed "Kandice"'s identity and continued the online chats. On November 19 or thereabouts, the Bureau arrested the defendant.

The case law uniformly holds that the fact that a defendant is mistaken in thinking that the person he is trying to entice is underage is not a defense to a charge of attempted illegal sexual contact with a minor. E.g., *United States v. Coté*, 504 F.3d 682, 687 and n. 6 (7th Cir. 2007), and cases cited there. The reported cases all involve law enforcement officers posing as minors, whereas the initial girl impersonator in this case was a private citizen. But we cannot see

what difference that could make. It is true that Application Note 1 to the federal sentencing guideline for criminal sexual abuse of a minor under the age of 16 (U.S.S.G. § 2A3.2) mysteriously defines "minor" to include "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years," and there is no similar reference to an impersonator who is not a law enforcement officer. But the Sentencing Commission explained that the purpose of the definition was merely to "clarify[] that 'victim' includes an undercover police officer who represents to the perpetrator of the offense that the officer was under the age of 16 years. This change was made to ensure that offenders who are apprehended in an undercover operation are appropriately punished." U.S.S.G. App. C, vol. II, Amendment 592, p. 49 (2003). In other words, the intention was to scotch any defense of impossibility, *United States v. Robertson*, 350 F.3d 1109, 1116-19 (10th Cir. 2003)—and rightly so because the offender's dangerousness is unrelated to whether the decoy was a child or an adult. See *United States v. DeCarlo*, 434 F.3d 447, 457-59 (6th Cir. 2006). The logic of the guideline definition embraces an impersonator who is not an officer—and anyway the defendant is not complaining about his sentence.

The purpose of the law of attempt is to nail a person who by his conduct has shown that had the attempt not been interrupted he would very likely have completed the crime that he attempted. As we explained recently in *United States v. Gladish*, 536 F.3d 646, 648 (7th Cir. 2008) (citations omitted), "a person who demonstrates by his conduct that he has the intention and capability of committing a crime is

punishable even if his plan was thwarted. The 'substantial step' [required for conviction of attempt] toward completion is the demonstration of dangerousness, and has been usefully described as 'some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime.' You are not punished just for saying that you want or even intend to kill someone, because most such talk doesn't lead to action. You have to do something that makes it reasonably clear that had you not been interrupted or made a mistake . . . you would have completed the crime. That something marks you as genuinely dangerous—a doer and not just" a talker.

There is, we grant, a legitimate concern with vigilantism—with private citizens conducting stings without the knowledge or authorization of the authorities. The vigilantes' aim might be to blackmail any offender whom they detect rather than to turn him over to the law enforcement authorities for prosecution. Cf. *United States v. Nardello*, 393 U.S. 286, 287 (1969); *United States v. Frost*, 139 F.3d 856, 857 and n. 1 (11th Cir. 1998). Or they might botch their investigation, alerting the offender in time for him to elude justice. But stings, including private ones, must be distinguished from entrapment. Stings are schemes for getting a person who is predisposed to criminal activity to commit a crime at a time or place in which he can be immediately apprehended; they are an essential tool of law enforcement against crimes that have no complaining victim. Entrapment refers to the use of inducements that cause a normally law-abiding person to commit a crime,

and is a defense when the entrapment is conducted by law enforcement officers or their agents. As we explained in *United States v. Hollingsworth*, 27 F.3d 1196, 1200 (7th Cir. 1994) (en banc), "The defendant must be so situated by reason of previous training or experience or occupation or acquaintances that it is likely that if the government had not induced him to commit the crime some criminal would have done so; only then does a sting or other arranged crime take a dangerous person out of circulation. A public official is in a position to take bribes; a drug addict to deal drugs; a gun dealer to engage in illegal gun sales. For these and other traditional targets of stings all that must be shown to establish predisposition and thus defeat the defense of entrapment is willingness to violate the law without extraordinary inducements; ability can be presumed. It is different when the defendant is not in a position without the government's help to become involved in illegal activity. The government 'may not provoke or create a crime, and then punish the criminal, its creature.' *Casey v. United States*, 276 U.S. 413, 423 (1928) (Brandeis, J., dissenting)."

There is no defense of private entrapment, *United States v. Manzella*, 791 F.2d 1263, 1269 (7th Cir. 1986), but that is of no great consequence in regard to sexual predation because the concern there is with the sting, not entrapment, though these are often and confusingly conflated. Thus we read that "the inexpensive, relatively invisible nature of [Internet sting operations] . . . permits private entrapment to become rampant, which is not the case in off-line settings or with other crimes. On-line vigilantism against pedophiles, in fact, has taken on unexpected proportions.

Traditional entrapment rules do not allow consideration of 'private entrapment.' Individuals tempted, induced or set up by anyone besides a state agent cannot raise an entrapment defense to criminal charges. Historically this was not a problem because most individuals, even if they had the motivation to entrap others, did not have the resources to orchestrate a sting while protecting themselves from retaliation if caught. Private entrapment was therefore a rare occurrence. The Internet has changed this, for better or worse, at least for the crimes perpetrated partly on-line." Dru Stevenson, "Entrapment by Numbers," 16 *U. Fla. J.L. & Public Policy* 1, 70 (2005). Private sting operations may become even more common now that there are organizations like "Perverted Justice," which trains adult volunteers to pose as children in chat rooms and unmask sexual predators (see www.perverted-justice.com, visited Nov. 18, 2008), and TV shows like Dateline NBC's "To Catch a Predator" (see www.msnbc.msn.com/id/10912603/, visited Nov. 18, 2008), which popularizes sexual-predation stings.

A private stinger can find himself accused of committing a crime in his attempt to catch others. There have been child pornography cases in which the defendant argued (unsuccessfully, however) that he possessed pornography only in order to help the police catch the real pornographer. See, e.g., *United States v. O'Keefe*, 461 F.3d 1338 (11th Cir. 2006) (the defendant claimed to possess child pornography for use in a personal crusade against sexual predators); *United States v. Polizzi*, 545 F. Supp. 2d 270 (E.D.N.Y. 2008) (the defendant claimed that he had intended to turn his collection of child pornography over to the police to help children). In an unpublished decision in a case rather like this

one, the defendant argued "that his intent in sending the sexually explicit tape to 'Cathy' was to elicit a similar tape from her so he could give the police evidence that would confirm his suspicions. The 'private sting operation' defense Solomon tendered requires the defendant's reasonable belief that he committed the charged conduct while acting as an agent for law enforcement authority. Solomon conceded he went to the police *after* he reproduced and mailed the tape to ['Cathy']. Thus, he could not reasonably have believed when he copied and sent the tape that he was acting as an agent for the police." *United States v. Solomon*, 1992 WL 25455, at *2-3 (9th Cir. 1992) (citation omitted).

But if the law wants to deter private sting operations, real or phony, the way to do that is "by imposing criminal liability on private parties who encourage crimes (via solicitation, conspiracy, and complicity)," Richard H. McAdams, "The Political Economy of Entrapment," 96 *J. Crim. L. & Criminology* 107, 166 (2005), rather than by letting another guilty person—the object of the successful sting—get away with his crime. Just as there is no defense of private entrapment, so there is no exclusionary rule applicable to evidence obtained improperly by private persons. *United States v. Hall*, 142 F.3d 988, 993 (7th Cir. 1998); *United States v. Jarrett*, 338 F.3d 339, 341-42, 345 (4th Cir. 2003); *United States v. Steiger*, 318 F.3d 1039, 1045-46 (11th Cir. 2003).

This case is particularly remote from the concerns with Internet vigilantism, since the "vigilante" was a mother seeking to protect her daughter from a sexual predator. It might have been prudent for her to have notified the FBI as

soon as she learned that a 48-year-old stranger was trying to contact her daughter, rather than to conduct her own investigation, which because she was an amateur at investigation might have scared off the defendant before there was enough evidence to prosecute him. But even if she was imprudent or precipitate, that cannot provide him with a defense.

The motion is granted and the appeal dismissed.