In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2599

NATHAN WARD,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 9025 — **Harry D. Leinenweber**, *Judge.*

ARGUED JANUARY 12, 2017 — DECIDED JUNE 5, 2017

Before BAUER, SYKES, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner Nathan Ward and his codefendants were convicted on several counts arising out of a stash-house robbery sting. They challenged their convictions

on direct appeal; Ward's conviction was affirmed.[1] Ward filed
a petition under 28 U.S.C. § 2255, seeking relief on several
grounds, including ineffective assistance of counsel. The
district court denied the petition without holding a hearing.
On appeal, Ward focuses on one issue: whether he received
ineffective assistance of counsel when his trial counsel failed
to raise an entrapment defense and object to the government's
motion *in limine* seeking to preclude that defense. We affirm.

## I. BACKGROUND

This story begins with codefendant Leslie Mayfield and
Jeffrey Potts, a confidential informant for the Bureau of
Alcohol, Tobacco, Firearms, and Explosives (ATF). Potts
recruited Mayfield to carry out an armed robbery of a cocaine
stash house; Mayfield was unaware that Potts was a confiden-
tial informant and that the stash house did not exist.

On July 23, 2009, Potts and Mayfield met with a disgruntled
drug courier. Unbeknownst to Mayfield, this drug courier was
actually undercover ATF Agent David Gomez. Gomez gave
Mayfield an overview of the plan to rob his cocaine supplier's
stash house, and he instructed Mayfield to recruit others to
join. After maintaining contact for the next couple weeks,
Mayfield and Gomez planned to meet on August 9, 2009.

On August 9, 2009, as planned, they held a meeting at a
strip mall parking lot in Naperville, Illinois, which lasted

---

[1] *See United States v. Kindle*, 698 F.3d 401, 405–08 (7th Cir. 2012), *reh'g en banc granted, opinion vacated sub nom.*, *United States v. Mayfield*, 2013 U.S. App. LEXIS 1456 (7th Cir. 2013), *panel opinion reinstated in part*, 771 F.3d 417, 424 n.3 (7th Cir. 2014) (en banc).

approximately 20 minutes. At that meeting, Mayfield brought along Montreece Kindle, and Kindle brought Ward and a person known only as "New York." Gomez provided the group details about the plan to rob the stash house, including the number of armed guards, the amount of cocaine, and how he would be informed of the location of the cocaine supply. The group then discussed logistics of their robbery plan.

Ward actively participated in this discussion. For example, when Gomez proposed that they split the cocaine fifty-fifty, Ward disagreed, insisting that the cocaine be split evenly five ways. After fielding several questions, Gomez told them to let him know if the armed robbery plan was too much for any of them to handle; no one did so, and Ward responded that he was only gathering as much information as possible. Further, Ward mentioned that his only concern was the number of guards stationed in the stash house. However, he was not concerned with whether the guards were armed because, as he asserted, they would enter the stash house with their guns already drawn.

On August 10, 2009, Ward and Kindle met at Mayfield's apartment with a newcomer named Dwayne White; "New York" was a no-show. In a van, Ward drove Mayfield, White, and Kindle to a designated parking lot to meet Gomez. Once they arrived, Mayfield exited Ward's van and entered Gomez's vehicle. Gomez then drove to a nearby storage facility; Ward, with the others in the van, followed. Soon after arriving at the storage facility, Gomez asked them if they had any hesitations with proceeding with the robbery plan. No one voiced any concerns. Instead, Ward announced that he did not "come all the way from Milwaukee for nothin'." Shortly after

Gomez received assurances from the group, he gave an arrest signal; ATF agents arrested Ward, Kindle, White, and Mayfield. ATF agents searched the van that Ward was driving and recovered three masks, several guns each with multiple rounds of ammunition, two bulletproof vests, latex gloves, and a large duffle bag.

Ward and the others were charged with four counts: conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846; attempted possession with intent to distribute cocaine, *id.*; possession of firearms during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A); and, unlawful possession of a firearm by a felon, *id.* § 922(g). Ward, Mayfield, and White were tried together in July 2010, while Kindle's trial was severed. Prior to trial, the government filed a motion *in limine* to preclude the defendants from presenting entrapment defenses. Mayfield objected to the government's motion, but Ward and the others did not. The district court granted the government's motion.

At trial, Ward elected not to testify, but Mayfield did. Mayfield testified that he did not know anyone in the Naperville area that would do the armed robbery with him. According to Mayfield, he did not contact anyone about participating in the armed robbery until August 7, 2009, which is the date he claimed that he called Kindle. Mayfield testified that based on his call to Kindle, Ward and "New York" showed up at his apartment, and that Kindle brought both of them. Mayfield testified that he was not an acquaintance of Ward and that he did not contact him. Mayfield testified that, on August 9, 2009, he briefly talked to Ward, Kindle, and "New

York" on the drive to meet Gomez, but he did not "lay everything out to them."

On July 14, 2010, a jury convicted Ward on all counts. The district court later sentenced him to 270 months' imprisonment. We affirmed Ward's conviction on direct appeal. *See Kindle*, 698 F.3d at 405–08. The panel's decision was vacated, but it was reinstated to the extent that it affirmed all the convictions with the exception of Mayfield's. *See Mayfield*, 771 F.3d at 424 n.3.

On December 18, 2013, Ward filed a *pro se* § 2255 petition. The district court denied the petition without holding an evidentiary hearing; the district court rejected Ward's claim that his counsel was ineffective for failing to pursue an entrapment defense. The district court concluded that Ward's counsel's performance was neither deficient nor prejudicial to his defense, reasoning that "Ward has not indicated what evidence, if any, could support the requisite inducement or lack of predisposition necessary to support an entrapment defense." Thereafter, the district court refused to grant Ward a certificate of appealability, but we granted it. This appeal followed.

## II. DISCUSSION

When reviewing the denial of a § 2255 petition, "we review the district court's legal conclusions *de novo*, its factual findings for clear error, and its decision to forgo holding an evidentiary hearing for abuse of discretion." *Martin v. United States*, 789 F.3d 703, 705 (7th Cir. 2015).

**A.  *Strickland* Claim**

Ward argues that his counsel was constitutionally ineffective for failing to raise an entrapment defense and object to the government's motion seeking to preclude that defense. To establish ineffective assistance of counsel, Ward must satisfy *Strickland*'s two-prong test: (1) that his counsel's performance fell below an objective standard of reasonableness; and, (2) that his counsel's deficient performance prejudiced his case, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). We may approach the inquiry in either order, and we need not address both prongs "if the defendant makes an insufficient showing on one." *Id.* at 697.

In this case, we need only address *Strickland*'s prejudice prong, determining whether the result of Ward's trial would have been different had his counsel pursued an entrapment defense. "Entrapment is a defense to criminal liability when the defendant was not predisposed to commit the charged crime before the intervention of the government's agents and the government's conduct induced him to commit it." *Mayfield*, 771 F.3d at 420. The entrapment defense consists of two temporally distinct elements: government inducement and lack of predisposition. *Id.* at 442. Where the government has not "induced" the crime within the meaning of the entrapment doctrine, then the defense is "unavailable without the need for a more complex inquiry into the evidence of predisposition." *Id.* at 432.

We will focus on the government-inducement element of the entrapment defense. "[I]nducement means government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts." *Id.* at 434–35; *see id.* at 435 (listing the "other" government conduct).

Ward argues that he was induced in two ways: (1) vicariously or derivatively induced through Mayfield; and, (2) then directly induced by Gomez.[2] In response, the government disputes both contentions and points out that Ward was recruited by Kindle.

First, relying on our decision in *United States v. Hollingsworth*, 27 F.3d 1196, 1203–04 (7th Cir. 1994) (en banc), Ward contends he was vicariously or derivatively induced through Mayfield.[3] In *Hollingsworth*, we reversed two defendants' convictions on two separate theories of entrapment. *Id.* In

---

[2]  Ward briefed this argument under *Strickland's* deficient-performance prong. However, we find it more appropriate to discuss under the prejudice prong. Regardless, under either prong, the result is the same.

[3]  What makes this task difficult for Ward is that, in *Hollingsworth*, we never coined a name for the inducement that occurs between the first entrapee and the derivatively-entrapped entrapee. *See* 27 F.3d at 1203–04. We attempted to do so—we alluded to out-of-circuit authorities' use of the term "vicarious inducement," *see id* at 1204 (collecting cases), but the defendant in *Hollingsworth* was not vicariously induced as defined by those out-of-circuit authorities, *see id.* Instead, we decided that what occurred between the codefendants was "enough" for a derivative entrapment defense. *See id.* For now, we will assume that Ward is invoking the "inducements" as mentioned in *Hollingsworth*.

doing so, we concluded that the entrapped codefendant, or first entrapee, "transmitted [the government agent's] inducements" to the codefendant, who we then determined to be derivatively entrapped. *Id.* at 1203.[4] What is important here is that the first entrapee directly involved and solicited the crime to the then derivatively-entrapped codefendant. *See id.* at 1203–04. As formulated in *Hollingsworth*, it is clear that the derivative entrapment defense is limited to accomplices "induced" through the first entrapee only. *See id.*

*Hollingsworth* is readily distinguishable. Unlike the derivatively-entrapped codefendant that was induced through the first entrapee in *Hollingsworth*, here Ward was not induced through the first entrapee. Ward glosses over the fact that he was recruited by Kindle, not by Mayfield.[5] Indeed, Mayfield testified that he did not contact or know Ward, and that Kindle brought Ward. Because Ward was not induced through a first entrapee, he cannot benefit from a derivative entrapment defense. *See United States v. Morris*, 549 F.3d 548, 551 (7th Cir.

---

[4] We need not delve into the two *Hollingsworth* defendants' dealings, nor could we. *See* 27 F.3d at 1212 (Easterbrook, J. dissenting) (noting the absence of the discussion on "whether the evidence show[ed] that [entrapped codefendant] acted as the government's agent, and in this role entrapped [the derivatively-entrapped codefendant]").

[5] Another shortcoming in Ward's argument is that it is premised on the assumption that Mayfield, like the entrapped codefendant in *Hollingsworth*, was entrapped as a matter of law. Mayfield has received a new trial, but the proceedings have not yet concluded and thus the determination of whether he was entrapped as a matter of law has not been made. As a result, Ward is unable to definitively establish that he was induced through an entrapped codefendant, or first entrapee, as occurred in *Hollingsworth*.

2008) ("Individuals tempted, induced or set up by anyone besides a state agent cannot raise an entrapment defense to criminal charges."). Thus, Ward's argument that he was vicariously or derivatively induced through Mayfield fails.

Second, Ward argues that he was also induced by Gomez. But this argument fails because Ward is unable to show any evidence that Gomez subjected him to unlawful inducements. Gomez furnished Ward—at the very most—an opportunity to commit the crime on its customary terms. Indeed, we have already determined that, on these facts, this was "an opportunity to participate in what was apparently a typical stash-house robbery … ." *Mayfield*, 771 F.3d at 441. We have considered Ward's other arguments concerning Gomez's role, but none merit discussion.

Because Ward has provided no evidence of unlawful inducement, we need not go through the predisposition inquiry. As a result, an entrapment defense would not have been successful, and thus Ward was not prejudiced by his counsel's failure to raise it. Accordingly, Ward did not receive ineffective assistance of counsel.

## B.  Evidentiary Hearing

Ward contends that the district court erred in summarily dismissing his petition without holding an evidentiary hearing. An evidentiary hearing is unnecessary when the district court is able to conclusively determine from the record that the prisoner is not entitled to any relief. 28 U.S.C. § 2255(b); *see Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016) ("Not every petitioner who seeks relief pursuant to § 2255 is entitled to an evidentiary hearing."). As shown above, the record

conclusively demonstrates that Ward is not entitled to any relief. *See* 28 U.S.C. § 2255(b). Accordingly, the district court did not abuse its discretion in dismissing Ward's petition without holding an evidentiary hearing.

### III. CONCLUSION

The district court's judgment is AFFIRMED.